Raymond MONGELUZO,
Plaintiff–Appellant,

v.

BAXTER TRAVENOL LONG TERM DISABILITY BENEFIT PLAN, an unincorporated association; Connecticut General Life Insurance Company, a Connecticut corporation; and Dynamic Controls, a division of Baxter Travenol Labs, a California corporation, Defendants–Appellees.

No. 93–55702.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1994.

Decided Jan. 31, 1995.

---

Dan Feinberg and Lucia C. Savage, Sigman & Lewis, Oakland, CA, for plaintiff-appellant.

Susan D. Salisbury, Lee & Dickinson, Universal City, CA, for defendants-appellees.

Sheldon Weinhaus, Weinhaus & Dodson, St. Louis, MO, Gary Wood, Aids Legal Consultants, San Francisco, CA, for amicus curiae.

Before: CANBY, LEAVY, and T.G. NELSON, Circuit Judges.

LEAVY, Circuit Judge:

Raymond Mongeluzo appeals the district court's grant of summary judgment in favor of the appellees, the Baxter–Travenol Long Term Disability Benefit Plan, Connecticut General Life Insurance Company, and Dynamic Controls, a division of Baxter Travenol Laboratories. Mongeluzo's action is based on the denial of his claim for long-term disability benefits pursuant to section 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a) (1985).[1] Mongeluzo contends the district court erred by refusing to consider new evidence tending to show that he was suffering from chronic fatigue syndrome when he was terminated from his employment in 1986. We reverse and remand.

## FACTS

Mongeluzo, who has a Master's Degree in Business Administration, began work as a hospital information specialist in November of 1985 for Dynamic Controls. His work, which he describes as very demanding, included frequent business trips and overtime. One month after the start of his employment, Mongeluzo suffered an umbilical hernia. He had corrective surgery in January of 1986 and immediately returned to a heavy workload. One week after his surgery, he developed white streaks on his tongue which required medical treatment. His ulcerative colitis, which had required hospitalization in 1973, flared up as well. The symptoms of colitis that persisted in 1986 were severe abdominal cramps, diarrhea, and rectal bleeding.

Mongeluzo states in a declaration dated March 29, 1993, that he began to experience severe fatigue while employed at Dynamic Controls, which rendered him unable to perform his work. He states he also suffered from headaches, oral candidiasis, and back and shoulder pain. In April of 1986 he was terminated for unsatisfactory work performance.

After he was terminated, Mongeluzo received treatment from a psychiatrist for anxiety and depression, and from an internist for his ulcerative colitis. He was examined by at least ten different doctors from April of 1986 until December of 1988, some in connection with his application for workers' compensation benefits, and some in connection with symptoms including loss of energy, ulcerative colitis, oral candidiasis, painful lymph nodes, headaches, muscle weakness, joint pain, depression, and anxiety. Mongeluzo has never returned to work.

As an employee of Dynamic Controls, Mongeluzo participated in Baxter–Travenol's long-term disability plan. The governing plan was issued by Connecticut General Life Insurance Company, a subsidiary of CIGNA Employee Benefits Company (CIGNA). CIGNA administers the Baxter–Travenol plan and pays the benefits. In 1986, Mongeluzo requested Dynamic Controls to send him the forms to apply for long-term disability. In June of 1988, after a lengthy delay and intervention by the Department of Labor, Baxter–Travenol, the parent company of Dynamic Controls, provided Mongeluzo with claim forms and other plan documents. Mongeluzo submitted his claim for long-term disability benefits on August 2, 1988. On January 13, 1989, CIGNA awarded Mongeluzo retroactive disability benefits for a period of twenty-four months from October 9, 1986, through October 8, 1988.

On May 9, 1989, CIGNA notified Mongeluzo that it was limiting him to twenty-four months of disability benefits based on CIGNA's determination that Mongeluzo's disability was caused by a "mental illness" or a "functional nervous disorder." This determination was based on a clause in the limita-

---

1. Section 1132(a)(1)(B) provides:
 A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

tions section of the plan that reads in relevant part:

> Payment will not be made under this plan for any disability ... for more than 24 months during your lifetime if the disability is caused by mental illness or functional nervous disorder.

On July 7, 1989, Mongeluzo appealed CIGNA's determination, stating that his disability did not have a psychiatric origin but rather was due to ulcerative colitis and "back disorders." CIGNA directed Mongeluzo to an orthopedist, Dr. Leonard Kalfuss, for a medical evaluation. After extensive orthopedic testing and a review of Mongeluzo's available medical history, Dr. Kalfuss reported on July 17, 1990, that Mongeluzo's back ailments would not prevent his employment, suggested a gastrointestinal consultation to rule out ulcerative colitis, and recommended a current psychiatric evaluation to support his opinion that Mongeluzo's psychological status would require "periodic and continued evaluation."

On August 31, 1990, CIGNA denied Mongeluzo's appeal on the basis of Dr. Kalfuss' report and the clause in the plan limiting benefits for mental illness. Mongeluzo filed this action, which sought disability benefits beyond the twenty-four month "mental illness" limitation, in federal court on October 8, 1991.

In February of 1992, Mongeluzo received a diagnosis of chronic fatigue syndrome from Dr. Vincent Marinkovich, an immunologist at Stanford University Medical School. Dr. Marinkovich declared:

> After I completed my work-up and testing of Mr. Mongeluzo I sent a letter dated March 23, 1992 to his attorney ... [in which] I confirmed my earlier diagnosis of [chronic fatigue syndrome] and stated that based upon his history, Mr. Mongeluzo had been disabled from [chronic fatigue syndrome] since April 1986 and that his dis-

ability was not caused by a mental illness or functional nervous disorder.

> [Chronic fatigue syndrome] is an immunological disorder which, until very recently, has been unfamiliar to many physicians. The syndrome was first reported in the medical literature after an outbreak of fatigue at Incline Village, California in 1984. The diagnostic guidelines of [chronic fatigue syndrome] were first published in 1988.

Dr. Marinkovich provided his findings to CIGNA on February 26, 1992, stating that Mongeluzo's "history strongly suggest[s] a diagnosis of chronic fatigue syndrome with multiple chemical hypersensitiv[ities]." Marinkovich also sent a letter to Mongeluzo's attorney in which he stated the same findings. The attorney forwarded a copy of Marinkovich's letter to CIGNA on April 1, 1992. CIGNA refused to consider Dr. Marinkovich's report or to reclassify its diagnosis of Mongeluzo.

The parties then filed cross-motions for summary judgment. Mongeluzo argued that the "mental illness" limitation was ambiguous and therefore to be construed against the drafter. Mongeluzo also argued that the district court should consider new evidence. Specifically, Mongeluzo requested the court to consider the diagnosis of chronic fatigue syndrome because it had been unavailable when he (1) became disabled in 1986, (2) presented a claim for disability benefits to CIGNA in 1988; and (3) appealed to CIGNA in 1989.[2] The court declined to consider the new evidence.

On appeal, Mongeluzo argues that the district court improperly excluded the new medical evidence of chronic fatigue syndrome in its de novo review. He also argues that the district court failed to apply this circuit's rule that ambiguous terms in an insurance policy must be construed against the drafter.

---

**2.** The evidence Mongeluzo offered in district court that was not in the administrative record was: (1) Dr. Marinkovich's report; (2) an affidavit from the Area Supervisor of the Division of Workers' Compensation, explaining that the decision to award workers' compensation was based solely on physical disability; and (3) an affidavit

from Dr. Marinkovich submitting seven medical articles that conclude that chronic fatigue syndrome is likely caused by an immunological factor and that depression results from the syndrome, rather than the syndrome resulting from depression.

## DISCUSSION

### Standard of Review

▮ A grant of summary judgment is reviewed de novo. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986). Viewing the evidence in the light most favorable to the non-moving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant law. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986).

▮ In actions challenging denials of benefits based on interpretations pursuant to section 1132(a)(1)(B), the district court reviews de novo, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). The benefit plan here does not grant such discretion to the administrator. *See Patterson v. Hughes Aircraft Co.,* 11 F.3d 948, 949 & nn. 1 and 2 (9th Cir.1993) (illustrating language that constitutes grant of discretion). Our review is also de novo.

### 1. Whether the Terms of the Plan Are Ambiguous

▮ Mongeluzo argues that because the terms "mental illness" and "functional nervous disorder" are not defined in the plan, those terms must be construed against the drafter. Mongeluzo is correct. *See id.* at 950 ("Ambiguities in the Plan are to be resolved in [the insured's] favor."); *Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534, 541 (9th Cir.) (same), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990).

The district court did not decide whether the terms "mental illness" or "functional nervous disorder" were ambiguous; it only noted they were undefined: "[n]either the PLAN or Summary Plan Description provide[s] a definition of 'Mental Illness' or 'Functional Nervous Disorder.'" In granting summary judgment, the district court concluded that:

> Having applied a *de novo* standard in reviewing the complete record before the plan administrator, the court finds that the decision of the plan administrator that Mr. Mongeluzo's disability was caused by a mental illness or functional nervous disorder was correct and was supported by ample evidence. It follows that, in accordance with the language of the plan, Plaintiff was entitled to only 24 months of benefits, which, he admits, he received.

No. 91–5467 WJR (Bx), Order Granting Summary Judgment and Findings of Fact and Conclusions of Law (filed 4/8/93) at 4, para. 3.

▮ However, in considering motions for summary judgment, the district court must decide whether there are genuine issues of material fact, not whether there was substantial or ample evidence to support the plan administrator's decision. *See Casey v. Uddeholm Corp.,* 32 F.3d 1094, 1098 (7th Cir.1994) ("Where the plan administrator has left contested issues of fact unresolved, the district court's review under Rule 56(c) should have been limited to determining whether any of the facts in dispute were material.").

Mongeluzo argues that his disability is not due to mental illness but rather to an immunological disorder. Mongeluzo further argues that:

> [T]he mental illness limitation was ambiguous as applied to plaintiff even prior to the diagnosis of [chronic fatigue syndrome]. Plaintiff suffered from symptoms including fatigue, ulcerative colitis, oral candidiasis, painful lymph nodes, recurrent headaches, muscle weakness, joint pain, depression and anxiety. CIGNA's policy does not address the question of whether a disability with mixed physical and emotional symptoms and an unclear etiology is considered a "mental illness." This is particularly problematic in cases—such as plaintiff's— where the vast majority of symptoms are physical, but the patient becomes depressed or anxious over a lack of adequate medical diagnosis and treatment.

Appellant's Opening Brief at 14.

▮ In *Patterson,* we said the undefined term "mental disorder" was ambiguous in two ways:

> First, the Plan does not specify whether a disability is to be classified as "mental"

by looking to the cause of the disability or to its symptoms....

Second, the Plan does not make clear whether a disability qualified as a "mental disorder" when it results from a combination of physical and mental factors.

*Patterson,* 11 F.3d at 950. The same observations are true in the case before us; therefore, the terms of the Baxter–Travenol Plan are ambiguous. Because of the rule that ambiguities are to be resolved in favor of the insured, if either a cause or a symptom of the disease were physical and caused the disability in whole or in part, then benefits are payable. *Id.* at 951.

Because the critical terms of the plan are ambiguous, a genuine issue of material fact exists as to whether Mongeluzo's symptoms constituted a "mental illness" or a "functional nervous disorder." Consequently, we reverse the district court's grant of summary judgment.

## 2. Whether the District Court Erred by Failing to Consider New Medical Evidence

■ Because the plan administrator and the district court did not recognize the ambiguity of the terms "mental disorder" or "functional nervous disorder," they failed to make the proper factual findings as to the nature of Mongeluzo's disability. *See id.* at 951.

We now must decide whether the evidence regarding Mongeluzo's chronic fatigue syndrome may be considered on remand.

The district court declined to consider the new evidence:

Defendants moved to exclude the declaration of Dr. Marinkovich and other documentation not before the plan administrator at the time of appeal. Where there was a sufficiently developed record before the plan administrator the court should not review documents not submitted to the plan administrator prior to its decision, *James v. Equicor,* 791 F.Supp. 804 (N.D.Cal.1992). Accordingly, the court will not review or evaluate Dr. Marinkovich's evidence because it was not submitted to the plan administrator during the

investigation and appeal of Mr. Mongeluzo's claim.

The court exercises its discretion to limit its review to the record before the administrator because the record was sufficiently developed.

No. 91–5467 WJR (Bx), Order Granting Summary Judgment and Findings of Fact and Conclusions of Law (filed 4/8/93) at 4, paras. 1 & 2.

The scope of review that a district court may use upon de novo review of a plan administrator's decision has not been resolved in this circuit. Mongeluzo urges us to follow a number of other circuits that permit the admission, under carefully circumscribed conditions, of new evidence that was not part of the record before the plan administrator. *See Uddeholm Corp.,* 32 F.3d at 1098–99 & n. 4; *Donatelli v. Home Ins. Co.,* 992 F.2d 763, 765 (8th Cir.1993); *Quesinberry v. Life Ins. Co. of North America,* 987 F.2d 1017, 1025 (4th Cir.1993) (en banc); *Luby v. Teamsters Health, Welfare and Pension Trust Funds,* 944 F.2d 1176, 1184–85 (3d Cir.1991); *Moon v. American Home Assurance Co.,* 888 F.2d 86, 89 (11th Cir.1989); *cf. Davidson v. Prudential Ins. Co.,* 953 F.2d 1093, 1094 (8th Cir.1992) (upholding rejection of evidence that was not before the plan administrator); *Perry v. Simplicity Eng'g, Div. of Lukens Gen. Indus., Inc.,* 900 F.2d 963, 966 (6th Cir.1990) (limiting the district court's review to the evidence presented to the plan administrator).

■ We agree with the Third, Fourth, Seventh, Eighth, and Eleventh Circuits that new evidence may be considered under certain circumstances to enable the full exercise of informed and independent judgment. In *Quesinberry,* the Fourth Circuit stated:

[W]e ... believe that the purposes of ERISA ... warrant significant restraints on the district court's ability to allow evidence beyond what was presented to the administrator. In our view, the most desirable approach to the proper scope of *de novo* review under ERISA is one which balances the[ ] multiple purposes of ERISA. Consequently, we adopt a scope of review that permits the district court *in*

*its discretion* to allow evidence that was not before the plan administrator. The district court should exercise its discretion, however, only when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision. In most cases, where additional evidence is not necessary for adequate review of the benefits decision, the district court should only look at the evidence that was before the plan administrator ... at the time of the determination.

987 F.2d at 1025 (emphasis added). In the circumstances of this case, additional evidence is necessary to conduct an adequate de novo review of the benefit decision because the narrow definition of "mental illness" in *Patterson* changes the legal posture of this case and requires reevaluation of the evidence.

Seen in this light, the claim of chronic fatigue syndrome is not a new claim, but simply a new explanation for Mongeluzo's disability. Thus, evidence regarding chronic fatigue syndrome must be considered on remand as one possible explanation for the disability that Mongeluzo has experienced. Consideration of that explanation is part of the determination of whether physical causes or physical symptoms were in whole or in part a cause of Mongeluzo's disability such that benefits must be paid. Thus, the change in the posture of the case, occasioned by the narrow definition of "mental illness," justifies the taking of additional evidence.

We emphasize that a district court should not take additional evidence merely because someone at a later time comes up with new evidence that was not presented to the plan administrator. However, where the original hearing was conducted under a misconception of the law; that is, the meaning of "mental illness" or "functional nervous disorder," it is necessary for the case to be reevaluated in light of the proper legal definitions.

We therefore remand to the district court for a factual determination whether Mongeluzo suffers from a disability not "caused by mental illness or functional nervous disor-

der," as we have construed those terms. We leave to the district court whether to remand to the plan administrator for an initial factual determination. *See Patterson*, 11 F.3d at 951 (remand to administrator ordered); *Uddeholm*, 32 F.3d at 1099 n. 4 ("The district court is not required to remand the case to the administrator.").

The judgment of the district court is REVERSED and REMANDED for findings and further proceedings consistent with this opinion.