Susan WAGGENER, Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA, Defendants.

No. CIV. 02CV0695L(AJB).

United States District Court,
S.D. California.

Nov. 6, 2002.

Chip Edelson of Gray, Cary, Ware & Friedenrich San Diego, CA, for Plaintiff.

Kira Schlesinger of Barger & Wolen Irvine, CA, for Defendants.

### Order Granting in Part and Denying in Part Defendant's Motion for Protective Order [Doc. No. 10]

BATTAGLIA, United States Magistrate Judge.

Defendant Unum Life Insurance Company of America moves the Court for a Protective Order precluding Plaintiff Susan Waggener from conducting any discovery outside the administrative record in this ERISA case. Waggener has filed an opposition. Unum Life has filed a reply. This motion is appropriate for submission on the papers and without oral argument pursuant to Local Rule 7.1(d)(1). For the reasons set forth herein, Unum's motion is GRANTED IN PART AND DENIED IN PART.

### Background

Waggener was a partner in the real estate department of the Los Angeles law firm of Gibson, Dunn & Crutcher until October of 1989. In November 1989, Waggener was diagnosed with chronic fatigue syndrome. Based upon that diagnosis, Waggener applied for and began receiving disability benefits under the firm's group disability benefits policy with Unum Life.

Over the course of the next ten years, Waggener saw more than a dozen different doctors complaining primarily of debilitating fatigue and cognitive impairment. Unum Life continued to pay benefits to Waggener. The administrative record includes records from many of these physicians including a cardiologist, rheumatologist, psychologist, chiropractor, endocrinologist, internist, and sleep disorder specialist. The administrative record also contains information from "independent medical examiners" and surveillance videotapes of Waggener.

On October 25, 2000, Unum Life notified Waggener that it had reevaluated her claim and was discontinuing benefits. Unum Life claims that it discontinued benefits because independent examinations have failed to substantiate Waggener's claims of impairment, and because her self-reported limitations lack credibility in light of surveillance it has conducted. After Unum Life denied Waggener's administrative appeal of its benefits termination decision, Waggener filed the current case.

Both parties acknowledge that the District Judge will review Unum Life's decision *de novo*. The parties dispute, however, the extent to which the court may consider evidence outside the administrative record in conducting its *de novo* re-

view. Waggener contends that the court must, in order to conduct a full and fair review, consider evidence outside the administrative record. In particular, Waggener contends that the court should consider that Unum Life's decision was biased and inherently wrought with conflict because Unum is both the plan administrator and the insurer.

To further its argument in this regard, Waggener has propounded discovery seeking to expand upon the conflict of interest posed as a result of Unum Life's position as both administrator and insurer. Through interrogatories, Waggener seeks to discover, among other things, (1) the identity of each person "who participated in any way in the evaluation or handling of Plaintiff's claims and/or appeal and who is not a current employee," (2) for each of those persons who was an independent contractor "the number of times [Unum has] employed that person to participate in evaluating or handling a claim ... [and] the total amount of compensation paid on each occasion," (3) the identity of "every attorney who provided claims advice" regarding Waggener, (4) the identity of "every attorney who provided legal advice" regarding Waggener, (5) the identity and position of "every person who participated in the decision to terminate Susan Waggener's benefits," (6) the similar identification of persons involved in evaluating Waggener's appeal, (7) "all other lawsuits against UNUM from 1998 to the present where the parties disputed whether or not the insured was disabled on account of chronic fatigue, CFS, CFIDS, or cognitive dysfunction," and (8) "all other lawsuits against UNUM from 1998 to the present where the plaintiff contended you improperly made use of surveillance or an independent medical examination." Declaration of Kira Schlesinger, Exhibit B.

Waggener also propounded document requests. Waggener sought the following types of documents: (1) "[a]ll documents that reflect, refer or relate to surveillance of plaintiff," (2) "[a]ny other documents that refer or relate to Plaintiff not contained in your administrative file, including any email," (3) "[a]ll documents that reflect claim guidelines" from 1992 to the present that refer or relate in any way to topics such as CFS, cognitive impairment, mental or psychological illness, surveillance, self-reported illness, the occupation of "attorney", social security disability, investigation of job duties, secondary gain, compromise offers, and independent medical examinations, (4) documents from January 1998 to the present reflecting "general selection of physicians for Independent Medical Examinations," (5) documents from January 1977 regarding the definition of "disability" in the Gibson, Dunn insurance policy, (6) any communications with Gibson, Dunn, from 1977 to the present, regarding many of the topics listed in (3) above, (7) communications with any insurance regulatory authority from January 1992 to the present on the same subjects, (8) documents from January 1992 to the present that "refer or relate to" twenty different physicians who examined Waggener, (9) documents from January 1992 to the present regarding plans to toughen claims practices, (10) documents from January 1992 to the present reflecting discussions to or from shareholders or prospective acquisition companies regarding the topics listed at (3) above, (11) documents from 1998 to the present of similar communications with claims departments serving insureds of the former Provident or Paul Revere companies, (12) documents from 1998 to the present reflecting complaints or criticisms made by any current or former employee regarding unfair claims practices, use of surveillance, self-reported illness, CFS, use of compromise offers, or independent medical examinations, and (13) similar documents relating

to complaints made by any court concerning Unum's claims practices, use of surveillance, self-reported illness, CFS, use of compromise offers, independent medical examinations, or definition of the occupation of attorney. Schlesinger Decl., Exhibit C.

Unum Life did not respond to any of this discovery, but instead brought the current motion for protective order to bar any discovery in this case.

### *Discussion*

Although Unum focuses almost exclusively upon whether the information sought by Waggener is admissible at the time of summary judgment or trial in this matter, the question posed by the current motion is not the admissibility of the information sought. Instead, this Court must determine whether the information sought in discovery "is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Waggener argues that the discovery she propounded is relevant to demonstrate that Unum Life was not acting as a neutral administrator, but instead was acting under a conflict of interest. Waggener argues that the conflict of interest resulting from Unum's position as both administrator and insurer implicates the adequacy of the administrative record in this case. Waggener also argues that the information it seeks is relevant to the credibility and qualifications of Unum's medical examiners.

■ A plan administrator's alleged conflict of interest is relevant to the district court's review of an ERISA claim in two ways. First, it is well established that evidence of an administrator's conflict of interest is relevant to the determination of what standard of review the district court should apply when evaluating the propriety of the benefits denial decision. *Regula v. Delta Family–Care Disability Survivorship Plan*, 266 F.3d 1130, 1145 (9th Cir.

2001). Ordinarily, the district court reviews *de novo* the decision of a plan administrator to deny benefits "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where the plan confers discretion upon the administrator, the district court will apply an abuse of discretion standard unless the administrator is "operating under a conflict of interest." *Regula*, 266 F.3d at 1145. Where the plan beneficiary plaintiff provides "material, probative evidence of a conflict," such evidence creates a rebuttable presumption that the administrator's decision denying benefits "was in fact a dereliction of its fiduciary responsibilities." *Id.* (citing *Lang v. Long–Term Disability Plan*, 125 F.3d 794, 798 (9th Cir.1997)). If the plan fails to produce evidence to show that the conflict of interest did not, in fact, affect the decision to terminate benefits, then the district court will review the decision *de novo. Id.* (citing *Tremain v. Bell Industries, Inc.*, 196 F.3d 970, 976 (9th Cir.1999)). In this case, however, both parties agree that the *de novo* standard of review applies. Thus, the evidence Waggener seeks is not relevant to the standard of review issue.

■ Nonetheless, an administrator's conflict of interest is also relevant to the question of what, if any, evidence the district court will consider outside of the administrative record. Where the district court is reviewing a plan administrator's decision for abuse of discretion, such review is strictly limited to the evidence in the record. *Taft v. Equitable Life Assurance Society*, 9 F.3d 1469, 1472 (9th Cir. 1993). In addition, in most cases where the district court is reviewing the plan administrator's decision *de novo*, "addition-

al evidence is not necessary for adequate review of the benefits decision, [and] the district court should only look at the evidence that was before the plan administrator ... at the time of the determination." *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan,* 46 F.3d 938, 944 (9th Cir.1995) (quoting *Quesinberry v. Life Ins. Co. of North America,* 987 F.2d 1017, 1025 (4th Cir.1993)). In order to enable the district court to come to a fully informed and independent judgment regarding the question of whether the plaintiff is entitled to benefits, however, the Ninth Circuit has held that a district court has the discretion to consider evidence outside the record when conducting a *de novo* review of a benefits decision. *Mongeluzo,* 46 F.3d at 943–44. The district court should exercise its authority to consider additional evidence "when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision." *Id.* (quoting *Quesinberry,* 987 F.2d at 1025); *see also Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1091 (9th Cir.1999) (en banc).

The Ninth Circuit has not specifically addressed the situations that warrant consideration of evidence outside the administrative record upon *de novo* review of an administrator's decision. In *Mongeluzo,* however, the court cited favorably the Fourth Circuit's decision in *Quesinberry,* wherein the court noted that exceptional circumstances may give rise to the need for additional evidence, including the following:

> [C]laims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the

same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.

*Quesinberry,* 987 F.2d at 1027. The Second Circuit has similarly stressed that "[a] demonstrated conflict of interest in the administrative reviewing body is an example of 'good cause' warranting the introduction of additional evidence." *DeFelice v. American Int'l Life Assurance Co.,* 112 F.3d 61, 67 (2d Cir.1997).

In light of these decisions, it is clear that the District Judge in this case will have to decide whether or not to exercise his discretion to allow the introduction of evidence outside the administrative record at the time of summary judgment or trial proceedings. The question presented by this motion, however, is not whether additional evidence will be admissible, but instead whether such information is discoverable and, if so, what the scope of discovery should be. This court believes that some information regarding Unum's handling of Waggener's claims is certainly discoverable.

■ Two district courts have addressed similar discovery issues, finding that information regarding a conflict of interest is discoverable to support the plaintiff's claim that evidence outside the administrative record should be considered upon *de novo* review. In *Sheehan v. Metropolitan Life Ins. Co.,* 2002 WL 1424592 (S.D.N.Y.2002), plaintiff requested the production of documents and depositions in order to discover whether the defendant plan administrator had a conflict of interest when it terminated plaintiff's disability benefits. The magistrate judge noted that a conflict of interest may constitute good cause to allow the district judge to consider evidence outside

the record in conducting a *de novo* review of the benefits decision. *Id.* at *3–4. The magistrate judge then reviewed plaintiff's discovery requests, allowing discovery of information directly related to the plaintiff, and the relationship between plaintiff's employer and the administrator regarding the administration of benefits. The magistrate judge denied plaintiff's request for discovery, however, with regard to disability claims by other employees based upon burden and confidentiality. Finally, the magistrate judge noted, generally, that with regard to the conflict of interest issue, "[p]laintiff is entitled to seek discovery for the purpose of determining which persons were involved in the evaluation of plaintiff's claim for benefits, in particular whether [the employer] influenced [the administrator's] evaluation of the claim, and what procedure was followed in terminating plaintiff's benefits." *Id.* at *6.

Similarly, in *Caldwell v. Life Ins. Co. of North America*, 165 F.R.D. 633 (D.Kan. 1996), plaintiff sought discovery in order to explore "(1) whether [the administrator] fulfilled its fiduciary duty to obtain information necessary to make its determination to deny benefits; (2) whether [the administrator] followed proper procedures in reviewing and denying the claim of plaintiff; (3) whether the record is complete." *Id.* at 638. The magistrate judge noted that although the trial court is ordinarily confined to the administrative record on ERISA claims, the discovery sought by the plaintiff was relevant insofar as it could provide a basis for the court to consider evidence outside that record. *Id.* at 637–38. Thus, the magistrate judge permitted the plaintiff to take the deposition of a physician whose records should have been included in the administrative file, but limited other discovery which was found to be irrelevant. *Id.* at 638.

Unum Life relies upon the decision of *Palmer v. University Medical Group*, 973 F.Supp. 1179 (D.Or.1997) for the proposition that discovery regarding conflict of interest is improper. In *Palmer*, the plaintiff sought discovery in support of his claim that the plan administrator was under a conflict of interest justifying the application of a *de novo* standard of review. In a very well-reasoned opinion, the magistrate judge divided ERISA claims into two basic categories—those appealing benefits decisions and those challenging "discretionary policy decisions." *Id.* at 1188–89. With regard to the typical benefits determination cases, to be reviewed under the abuse of discretion standard, the magistrate judge noted that "the primary focus of judicial review should not be upon the motives of the decision maker but rather upon the merits of the underlying benefits decision, *i.e.,* whether the underlying decision to deny benefits was within the range allotted to a reasonable decision maker." *Id.* at 1189. In order to insure that discovery on the conflict of interest issue does not overshadow review of the underlying benefits decision, the court suggested the following course of action:

> Instead of forcing the plaintiff in a "benefits determination" case to prove that the underlying decision was tainted by a conflict of interest (or requiring the defendant to show the decision was not tainted), the courts should simply acknowledge that in certain situations there is an inherent conflict of interest, *e.g.,* when the decision maker is the insurance company that must pay any benefits awarded. If such a conflict of interest appears to be present, the court still reviews the decision for abuse of discretion—assuming the Plan contains the requisite language conferring discretion upon the plan administrator—but the court's review is a little more searching (depending upon the severity of the conflict) and the court is not as quick to defer to the administrator's discretion.

*Id; see also Spangler v. Unum Life Ins. Co.,* 38 F.Supp.2d 952, 955–56 (N.D.Okl. 1999) (denying discovery on conflict of interest relevant to what standard of review applies); *Newman v. Standard Ins. Co.,* 997 F.Supp. 1276, 1280–81 (C.D.Cal.1998) (same).

The approach of the court in *Palmer* may make sense where the district court is reviewing the record for abuse of discretion, where evidence outside the record simply may not be considered. Under such circumstances, it may be appropriate for the court to prohibit discovery and instead simply assume that a conflict of interest exists warranting some heightened standard of review of the administrator's decision.[1] In this case, however, the district court will review the record *de novo.* If Waggener can demonstrate that Unum was functioning under a conflict of interest, and the District Judge is concerned about Unum's impartiality, he may permit Waggener to introduce evidence outside the record with regard to the disability issue. *Kearney,* 175 F.3d at 1095; *Quesinberry,* 987 F.2d at 1026; *DeFelice,* 112 F.3d at 67. Without discovery, Waggener may be unable to obtain such information. Thus, this Court concludes that in this case, where the District Judge will review the administrator's decision *de novo,* some discovery regarding conflict of interest is appropriate.

Reviewing Waggener's discovery requests, however, this Court believes that Waggener seeks far more than what is necessary to demonstrate the type of conflict that would permit the introduction of additional evidence at the time of summary judgment or trial. Waggener's broad discovery requests are not focused on learn-ing information regarding Unum's decision to terminate her benefits. Instead, Waggener requests the production of large categories of general claims handling information. Even if such information is of marginal relevance, this Court may limit or prohibit such discovery to the extent that it is unreasonably cumulative or duplicative, is obtainable from some other source that is more convenient and less burdensome, or if the burden of the discovery outweighs its likely benefits. Fed. R.Civ.P. 26(c).

Review under ERISA of an administrator's decision to deny or terminate benefits is not subject to the level of adversarial testing as other types of cases such as breach of contract. ERISA has two primary goals: " 'to increase the likelihood' that beneficiaries 'will receive their full benefits' and 'to maintain the premium costs of such system at a reasonable level'." *Kearney,* 175 F.3d at 1094 (quoting 29 U.S.C. § 1001b(c)(3), (5)). The Supreme Court has stressed both "the public interest in encouraging the formation of employee benefit plans" and "the need for prompt and fair claims settlement procedures." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Because of the interest in both maintaining premium costs at a reasonable level and allowing for the prompt and fair resolution of claims, discovery simply cannot be as broad and overreaching as in other types of cases. Instead, this Court believes that discovery must be more carefully tailored to the issues raised in the case. In this particular instance, for example, the discovery Waggener seeks must be closely related to the need to demonstrate conflict of interest.

---

1. It is not exactly clear how these cases can be reconciled with the Ninth Circuit's three-step approach to determining whether plaintiff has demonstrated the type of conflict of interest necessary to justify applying a height-ened abuse of discretion standard. *See Regula,* 266 F.3d at 1145. The issue is not presented in this case, however, because both parties agree that the *de novo* standard applies.

In this regard, this Court finds the case of *Hall v. Unum Life Ins. Co.*, 300 F.3d 1197 (10th Cir.2002) to be particularly instructive. In *Hall*, the court first stressed that "it is the unusual case in which the district court should allow supplementation of the record." *Id.* at 1203. The court then extensively discussed the *Quesinberry* exception that permits the consideration of additional evidence "where the payor and the administrator are the same entity and the court is concerned about impartiality." *Quesinberry*, 987 F.2d at 1027. The court in *Hall* first noted that additional evidence for *de novo* review cases is not necessarily appropriate just because the administrator and the payor are the same party. *Hall*, 300 F.3d at 1205. "The administrator and the payor are often the same party for many ERISA benefit plans. If we were to adopt a blanket rule that the admission of additional evidence should be allowed whenever the same party is the administrator and payor, then it will not be the unusual case in which additional evidence is admitted." *Id.* The court noted that "in the context of arbitrary and capricious review, we only reduce our deference to the administrator's decision to the extent that an actual conflict is shown—a 'sliding scale' approach—which allows us to calibrate the reduced deference to the level of the actual conflict that exists." *Id.* With regard to what evidence of conflict of interest should be permitted upon *de novo* review of an administrator's decision, the court went on to explain as follows:

> Similarly, in the context of admitting additional evidence based on a possible conflict of interest, evidence should only be permitted to the extent that it is relevant to the conflict of interest and that the conflict of interest in fact requires the admission of the evidence. That way the district court can calibrate the admission of additional evidence to the amount of conflict of interest that actually existed and to the manner in which that conflict tainted the decision-making process of the administrator.

*Id.* at 1205–06. Finally, the court noted that the before the additional evidence should be admitted by the district court, there should be a showing of "the manner in or extent to which the conflict of interest affected UNUM's decisionmaking process" and "how the additional evidence would be relevant to the conflict of interest or would address any shortcomings in the record or decisionmaking process caused by the conflict." *Id.* at 1206.

In addition, this Court finds persuasive several Ninth Circuit cases discussing the types of evidence of conflict of interest that is relevant when considering what standard of review to apply to ERISA cases. In *Regula*, for example, the Ninth Circuit noted that there was evidence before the district court that the administrator abruptly terminated plaintiff's benefits after eight years, without any evidence of a significant change in his medical condition, and relied upon the unsupported opinions of its own examining physicians over the opinions of plaintiff's own treating physicians. *Regula*, 266 F.3d at 1147. The court noted the troubling conflict of interest that arises "when benefit plans repeatedly hire particular physicians as experts" and then rely upon the opinions of those doctors over the plaintiff's own treating physicians. *Id.* at 1143. The court held that because the administrator's "sudden and thinly supported departure from the prevailing diagnosis" was neither consistent nor supported by the record, such evidence constituted "material, probative evidence of a conflict" and that the district court should have considered such evidence to determine whether it was appropriate to apply a less deferential standard of review. *Id.* at 1147.

Similarly, in *Lang v. Long–Term Disability Plan*, the Ninth Circuit noted that

the administrator gave sharply inconsistent reasons for terminating plaintiff's benefits. *Lang,* 125 F.3d at 799. The plaintiff received benefits for two years based upon a diagnosis of anxiety, depression, and insomnia. When the insurer notified her that her plan provided only a two-year benefit period for mental disorders, plaintiff claimed she was suffering from fibromyalgia. The insurer initially refused to reinstate her benefits stating that there was insufficient evidence that she suffered from fibromyalgia, but later reversed course and asserted that the fibromyalgia itself was not disabling. These inconsistencies, the court held, constituted "material, probative evidence that its decision was affected by self-interest." *Id.* Finally, in *Tremain v. Bell Industries, Inc.,* the Ninth Circuit found the administrator's explanations for terminating the plaintiff's benefits "troubling." *Tremain,* 196 F.3d at 977. The administrator in *Tremain* terminated plaintiff's benefits based upon an incorrect definition of disability, and then refused to apply the correct definition when the error was pointed out by the plaintiff. The administrator later informed the plaintiff that it was denying her disability benefits because her earning capacity had not decreased by at least 50%, but would not state what it considered her earning capacity to be. *Id.* Based upon this evidence, the Ninth Circuit concluded that application of a *de novo* standard was proper because there was "sufficient material and probative evidence to create a rebuttable presumption that MetLife's decision to terminate her disability benefits was affected by its conflict of interest." *Id.*

■ Based upon the above explanations of the relevance of conflict of interest evidence upon *de novo* review of an administrator's decision under ERISA, and the situations in which the Ninth Circuit has found a conflict of interest exists justifying application of a heightened standard of review, this Court concludes that Waggener's discovery in this case is properly limited to the following: (1) information necessary to demonstrate "the manner in or extent to which the conflict of interest affected UNUM's decisionmaking process" and "address any shortcomings in the record or decisionmaking process caused by the conflict," and (2) information regarding the independence or neutrality of the physicians utilized by Unum for medical opinions relative to Waggener's disability claim. These categories of information appear reasonably related to the claims and defenses in this case, and may lead to evidence that the District Judge may permit to be admitted at the time of summary judgment or trial. Limiting discovery to these categories of information will permit Waggener to obtain the information she needs, but protect Unum from the more broad and far-reaching discovery Waggener has proposed. *See e.g., Locher v. Unum Life Ins. Co.,* 126 F.Supp.2d 769, 777 (S.D.N.Y.2001) (allowing some additional evidence on *de novo* review regarding whether or not plaintiff was disabled, but not allowing Unum internal report regarding evaluation of CFS claims because such document was not relevant to ultimate question of whether plaintiff was disabled).

To this end, the Court will order Unum to provide responses to Interrogatories 1 (identifying persons who participated in evaluating Waggener's claim), 2 (identifying the extent to which physicians or other independent contractors who participated in evaluating Waggener's claim have previously participated in claim handling for Unum), 5 (identifying those persons who participated in the decision to terminate Waggener's benefits), and 6 (identifying those persons who participated in evaluating Waggener's appeal). Unum shall also produce documents responsive to Document Request Nos. 1 (regarding surveil-

**1188**

lance of Waggener), 2 (any other documents not contained in the administrative file regarding Waggener), 3 (claims guidelines for CFS and other matters limited to those which were in effect at the time Waggener's claim was terminated), 4 (regarding selection of Independent Medical Examiners), 5 (limited to documents reflecting the underwriting or definition of disability in the Gibson, Dunn & Crutcher policy at the time Waggener's claim was terminated), and 8 (limited to documents from those physicians concerning Waggener to the extent they are not otherwise contained in the administrative file). The Court concludes that Waggener's other discovery requests are overbroad and not relevant to the claims and defenses presented in this case. In particular, the Court concludes that the additional information sought by Waggener is not relevant to how Unum's decisionmaking process *in this case* was impacted by its dual role as insurer and administrator. Thus, Unum's motion for protective order will be granted with regard to these other discovery requests.

### Conclusion

For the reasons set forth herein, Unum's motion for protective order [Doc. No. 10] is GRANTED IN PART AND DENIED IN PART. Within thirty (30) days of service of this Order, and subject to the limitations imposed herein with regard to particular discovery requests, Unum shall provide responses to Interrogatories 1, 2, 5, and 6, and shall produce documents responsive to Document Request Nos. 1–5, and 8.

IT IS SO ORDERED.