Sandra FROST, Plaintiffs,

v.

**METROPOLITAN LIFE INSURANCE COMPANY, et al., Defendants.**

No. CV 05–02486 JFW SSX.

United States District Court, C.D. California.

Feb. 9, 2006.

Glenn R. Kantor, Kantor & Kantor, Northridge, CA, for Plaintiff.

Brent M. Finch, Stone Rosenblatt Cha, Woodland Hills, CA, Eric R. McDonough, Seyfarth Shaw, Los Angeles, CA, Krista Lee Mitzel, Lawrence E. Butler, Robin M. Cleary, Seyfarth Shaw, San Francisco, CA, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS AND THIRD PARTIES' MOTION FOR PROTECTIVE ORDER OR, IN THE ALTERNATIVE, TO QUASH SUBPOENAS AS TO AMY HOPKINS, M.D., REGINALD GIVENS, M.D., JOSEPH JARES, III, M.D., KATHERINE DUVALL, M.D., NETWORK MEDICAL REVIEW, AND ELITE PHYSICIANS, LTD. (DOCKET NOS. 16 AND 34)

SEGAL, United States Magistrate Judge.

## I. INTRODUCTION

This is an ERISA action seeking the recovery of long term disability benefits under a plan insured by Defendant MetLife. Plaintiff Sandra Frost ("Plaintiff"), an employee of Wells Fargo Bank, asserts that she was rendered totally disabled from her job as of January 2, 2002. (Jt. Stip. at 2). Plaintiff claims that she suffers from numerous serious medical conditions, including Multiple Sclerosis. (*Id.*). MetLife, as the administrator of the Wells Fargo Short Term Disability Plan and as the insurer of the Wells Fargo Long Term Disability Plan, paid Plaintiff's claim from January 1, 2002 through February 29, 2004. (*Id.*). At that time, MetLife terminated payments to Plaintiff.

MetLife based the February 29, 2004 denial on the opinion of Dr. Amy Hopkins, the medical record reviewer for MetLife. (Jt. Stip. at 2). MetLife contracted with Elite Physicians, a subsidiary of Network Medical Review, to obtain a consultant's

report from Dr. Hopkins. Dr. Hopkins opined that there was "no physical impairment [ . . . ] objectively documented which would preclude EE from RTW [return to work], FT [full time], own occupation, no restrictions or limitations." (*Id.*).

Plaintiff appealed MetLife's termination of her claim, requesting that MetLife explain what changed in her condition that would now allow her to return to work. (Jt. Stip. at 3). During the administrative review process, Metlife had three different doctors review Plaintiff's records. The services of these doctors, Joseph Jares, M.D., Katherine Duvall, M.D., and Reginald Givens, were provided to Metlife by Elite Physicians/Network Medical Review. (Jt. Stip. at 4).

Plaintiff served deposition subpoenas on the three doctors who reviewed her records and also requested documents. In response to objections from MetLife and the doctors, Plaintiff withdrew the document requests, and offered, in lieu of depositions, to have the doctors respond to written interrogatories. (Jt. Stip. at 5). The questions would be directed to the financial relationship between the reviewing doctors, MetLife, and the disability insurance industry. Metlife and the doctors maintained their position that no discovery is permitted in an ERISA case. (Jt. Stip. at 8)

MetLife and the doctors then filed the current "Motion For Protective Order," seeking an order barring any depositions, written interrogatories or document production by the doctors, or in the alternative, an order quashing the subpoenas. According to Plaintiff, the current discovery that is outstanding is the deposition subpoenas to the reviewing doctors, a subpoena for documents to Network Medical Review ("NMR"), and a subpoena for documents to Elite Physicians, LTD. (Jt. Stip. at 5).

## II. DISCUSSION

When an ERISA plan vests its administrator (i.e., MetLife) with discretion to determine eligibility for benefits and to construe the terms of the plan, the district court ordinarily reviews the administrator's determination under an abuse of discretion standard of review. *Lang v. Standard Insurance Co.,* 125 F.3d 794, 798 (9th Cir.1997) (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). The degree of judicial deference associated with this standard of review may, however, be affected by factors such as the plan administrator's conflict of interest. *Id.* An inherent conflict of interest exists where the funding source and the administrator of a plan is the same entity. *Id.*

The traditional abuse of discretion standard is applied unless it appears that the conflict may have influenced the decision. *Id.* at 797–78. To make such a showing, the plaintiff must come forward with "material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Atwood v. Newmont Gold Co., Inc.,* 45 F.3d 1317, 1322 (9th Cir.1995). Once the plaintiff comes forward with evidence that the fiduciary may have acted in its own self-interest, a more careful review must be undertaken. The plan then bears the burden of rebutting the presumption by producing evidence to show that the conflict of interest did not affect its decision to deny or terminate benefits. *Lang,* 125 F.3d at 798. If the plan fails to carry its burden, the court's review becomes *de novo,* "without deference to the administrator's tainted exercise of discretion." *Id.* (citing *Atwood,* 45 F.3d at 1323).

In the present case, MetLife is both the claims administrator and the funding

source of the ERISA plan. (Jt. Stip. at 8). Plaintiff argues that Elite Physicians, a subsidiary of NMR, and doctors employed by Elite Physicians are not neutral and impartial. (Jt. Stip. at 16). Plaintiff points to decisions in other cases that have observed that MetLife utilizes NMR extensively (Jt. Stip. at 16–17) and argues that the on-going financial relationship between MetLife and NMR results in a conflict of interest for doctors employed by NMR. (*Id.*). Plaintiff also notes that two courts have commented unfavorably upon the review practices of one of MetLife's reviewing doctors, Joseph Jares. (*Id.* at 17–18). Plaintiff seeks discovery to reveal the extent of the financial relationship between MetLife and the four doctors. Furthermore, Plaintiff intends to determine the extent to which these doctors perform services for MetLife versus other companies or maintain a medical practice. (Jt. Stip. at 18). Defendants argue that this type of discovery is contrary to the policies underlying the ERISA statute. (Jt. Stip. at 13).

In *Tremain v. Bell Industries, Inc.*, 196 F.3d 970 (9th Cir.1999), the Ninth Circuit found that a court could consider evidence outside the administrative record for the purpose of determining whether a plan administrator's decision was affected by its conflict of interest. *Id.* at 976–77. As MetLife served as both the funder and plan administrator for Bell Industries, the Ninth Circuit found that there was a conflict of interest. After a conflict of interest is found, the court must determine whether there is sufficient material and probative evidence to trigger a rebuttable presumption that MetLife's conflict of interest affected its decision to deny benefits. *Id.* at 976.

In *Tremain*, the plaintiff offered evidence from outside the record—W-2 statements, her employment agreement, and deposition testimony of a Bell employee—to support her claim that MetLife's conflict of interest influenced its decision to deny her benefits. The Ninth Circuit found that the plaintiff's evidence, combined with the record, was sufficient to create a rebuttable presumption that MetLife's decision to terminate her disability benefits was affected by its conflict of interest. Furthermore, as MetLife did not present any evidence to rebut that presumption, the denial of benefits was reviewable *de novo*. *Tremain*, 196 F.3d at 976–77.

The Ninth Circuit, in its instructions regarding remand, directed that the district court should apply a *de novo* standard of review during the trial and further instructed that the court would have to consider whether to admit evidence outside the administrative record. The Ninth Circuit cited to its earlier decision in *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938 (9th Cir. 1995) and advised that a district court *should* admit evidence outside the record when that evidence " 'is necessary to conduct an adequate de novo review of the benefit decision.' " *Tremain*, 196 F.3d at 978 (citations omitted and emphasis added).

Several courts, following *Tremain*, have found that limited discovery is permissible in ERISA actions to determine whether the insurer's determination to deny benefits was influenced by its conflict of interest. *See Medford v. Metropolitan Life*, 244 F.Supp.2d 1120, 1128 (D.Nev.2003)(plaintiff allowed limited discovery on issues related to standard of review and whether there was a conflict of interest affecting the benefits decision); *Waggener v. UNUM Life Insurance*, 238 F.Supp.2d 1179, 1186 (S.D.Cal.2002)(plaintiff allowed discovery on the extent to which the conflict of interest affected Unum's decisionmaking process and information regarding the independence or

neutrality of the physicians utilized by Unum); *see also* Exhibits 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 (discovery orders issued in the ·Central District of California granting similar discovery requests). This Court agrees with the above authorities regarding the permissibly of limited discovery in ERISA matters.

## III. CONCLUSION

█ The Court finds that limited discovery should be allowed in this action. However, the Court also finds that the scope of Plaintiff's specific discovery requests goes beyond questions intended to discover MetLife's conflict of interest or the conflict of interest MetLife's doctors may have had in this case.

Therefore the Motion for Protective Order is **GRANTED** in part and **DENIED** in part, as set forth below.

The Court ORDERS that Plaintiff be permitted to conduct limited discovery on issues related to MetLife's conflict of interest. In particular, Plaintiff may conduct discovery regarding the independence or neutrality of the physicians utilized by MetLife in Plaintiff's case. The Court will permit the following discovery:

1). The depositions of Drs. Hopkins, Jares, Duvall and Givens. Plaintiff shall immediately proceed with the depositions upon reasonable notice to the deponents. The depositions shall be limited to questions concerning the nature of the relationship that each doctor has with MetLife; the financial remuneration realized by the doctors as a result of this relationship; the extent to which the doctors perform services for MetLife versus other companies and/or maintain a medical practice.

The qualifications of the doctors and the reasonableness of MetLife's reliance on the doctor's opinions are not appropriate grounds for inquiry during the doctors' depositions.

2). For the subpoena to Network Medical Review:

Within 14 days of the date of this Order, the third parties must respond to:

Request Nos. 1, 2, 5, 8, 11, 14, 15, and 16.

The remainder of requests go beyond the relationship that these doctors had with MetLife and therefore are beyond the scope of the issues for discovery. The third parties are not required to respond to:

Request Nos. 3, 4, 6, 7, 9,·10, 12, and 13.

3). For the subpoena to Elite Physicians, Ltd.:

Within 14 days of the date of this Order, the third parties must respond to:

Request Nos. 1, 2, 5, 8, 11, 14, 15, and 16.

The remainder of requests go beyond the relationship that these doctors had with MetLife and therefore are beyond the scope of the issues for discovery. The third parties are not required to respond to:

Request Nos. 3, 4, 6, 7, 9, 10, 12, and 13.

IT IS SO ORDERED.