Laura J. **CHADWICK**, Plaintiff,

v.

**METROPOLITAN LIFE INSURANCE COMPANY, aka MetLife, Doe Insurance Agent and Does 2 to 100, Defendants.**

No. CIV. 06–2245 FCD EFB.

United States District Court, E.D. California.

July 25, 2007.

David Allen, Jonathan Armstrong Hendricks, David Allen and Associates, Sacramento, CA, for Plaintiff.

Rebecca A. Hull, Michael N. Westheimer, Sedgwick Detert Moran and Arnold, San Francisco, CA, for Defendant.

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

This matter is before the court on defendant Metropolitan Life Insurance Company, aka MetLife's ("defendant") motion for summary judgment as to plaintiff Laura J. Chadwick's ("plaintiff") complaint raising claims under the Employee Retirement Income Security Act ("ERISA"). (*See* Notice of Removal, filed Oct. 12, 2006 [Docket # 2].) Plaintiff seeks long-term disability ("LTD") benefits under the EdFund Employee Welfare Plan ("Plan").[1]

For the reasons set forth below, the court finds that the proper standard of review of this matter is abuse of discretion, as opposed to de novo, and thereunder, the court cannot find that defendant acted arbitrarily or capriciously in denying plaintiff's LTD benefits claim. As such, the court GRANTS defendant's motion for summary judgment.

### BACKGROUND[2]

#### A. *Terms of the Plan*

Edfund, plaintiff's employer, adopted

---

1. Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78–230(h).

2. The following statement of the facts is primarily drawn from defendant's motion for summary judgment (Docket # 16), as the facts stated therein derive from the underlying ad-

the Plan[3] to provide its employees with income in the event of certain disabilities. Plaintiff was a financial aid analyst at Edfund until April 2, 2004, when she alleged she was disabled from working due to fibromyalgia—a syndrome consisting of aching pain and stiffness in one or numerous parts of the body. (ADMIN 0117.) Plaintiff sought LTD benefits under the Plan.

Defendant both funds and acts as the claims administrator for the Plan. (Def. Mem. of P. & A., filed May 25, 2007 ["Mot'n"], at 1 [Docket # 16].) For defendant to approve a claim for LTD benefits, a plan participant must become and remain disabled, as that term is defined in the Plan, while covered under the Plan. (Mot'n at 2.) The Plan defines "disabled" in pertinent part as follows:

"Disability" or "Disabled" means that, due to an Injury or Sickness, you require the regular care and attendance of a Doctor and:

(1) you are unable to perform each of the material duties of your regular job; and

(2) after the first 24 months of benefit payments, you must also be unable to perform each of the material duties of any gainful work or service for which you are reasonably qualified taking into consideration your training, education, experience and past earnings; or

(3) you, while unable to perform all of the material duties of your regular job on a full-time basis, are: (a) performing at least one of the material duties of your regular job or of any other gainful work or service on a part-time or full-time basis; and (b) earning currently at least 20% less per month than your Indexed Basic Monthly Earnings due to that same Injury or Sickness

(ADMIN 0029.) To be eligible for benefits under the Plan, participants must first demonstrate 180 days of disability, known as the "Elimination Period." (*Id.* at 0005, 0029.) After completing the Elimination Period, participants will receive monthly LTD benefits if they remain disabled, as defined in the Plan. (*Id.* at 0031.)

## B. Defendant's Discretion Under the Terms of the Plan

Defendant has full discretion to interpret the terms of the Plan and to determine the eligibility of plan participants. (*Id.* at 0041.) Specifically, the Plan states:

In carrying out their respective responsibilities under the Plan, the Plan administrators and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that

---

ministrative record and Plan documents. In her opposition, plaintiff attempts to dispute certain facts as described in defendant's motion. However, the court finds that there are no *material* facts in dispute. (*See* Def.'s Reply to Pl.'s Statement of Disputed Facts, filed June 22, 2007 [Docket # 33].) Also, as the court discusses below, it does not consider the Social Security Administration's ("SSA") record filed by plaintiff in support of her opposition. *See infra* Analysis, Part A.

**3.** The Plan is attached as Exhibit 1 to Defendant's Notice of Filing of Administrative Record [Docket # 17]. The Plan bears the production number range of ADMIN 0001–0041. All further references to the Plan will be to the applicable production number. The remainder of the administrative record bears the production number range of ADMIN 0042–0129. All further references to the administrative record documents will be to the applicable production number.

the interpretation or determination was arbitrary and capricious.

(*Id.*) When filing a claim, the claimant must provide satisfactory proof to defendant describing the nature and extent of the injury or sickness. (*Id.* at 0034.)

## C. *Defendant's Denial of Plaintiff's Claim for LTD Benefits*

Plaintiff began work with Edfund as a financial aid analyst on October 27, 1997. (Pl.'s Opp' n, filed June 8, 2007 ["Opp'n"], at 4 [Docket # 19].) Plaintiff's position was fully sedentary in nature and required repetitive use of hands, fine finger dexterity for three to four hours per day, and the ability to occasionally lift or carry up to ten pounds. (ADMIN 0118.) Plaintiff ceased working for Edfund on April 2, 2004 and sought disability benefits based primarily on a diagnosis of fibromyalgia. (*Id.* at 0117.)

Defendant received plaintiff's initial claim for LTD benefits on June 17, 2004. (*Id.* at 0042.) Plaintiff submitted several documents, including two Attending Physician Statements ("APS") from her treating physician, Dr. Robin L. Wong. (*Id.* at 126–29.) On the first APS, Dr. Wong diagnosed plaintiff with fibromyalgia and stated that plaintiff could operate a motor vehicle, perform fine finger movements with both hands, and occasionally lift up to twenty pounds. (*Id.* at 126–27.) Dr. Wong did not recommend plaintiff cease work; instead, she advised plaintiff to continue her regular occupation part-time for twenty-five hours per week. (*Id.*) However, on the second APS, dated the same as the first, April 8, 2004, Dr. Wong changed her ultimate opinion and recommended that plaintiff cease work due to "too much discomfort." (*Id.* at 0129.) While Dr. Wong changed her conclusion, her assessment of plaintiff's health remained unchanged. (*Id.* at 0126–29.)

On June 29, 2004, defendant sent a letter to plaintiff requesting additional information. (*Id.* at 0115–16.) Defendant requested plaintiff send, by July 29, 2004, among other information, "all medical records from current treating physicians" and "copies of your medical records from *April 2004–present.*" (*Id.*) (emphasis in original). On July 27, 2004, defendant sent another letter to plaintiff notifying her that it had not received the requested information, and therefore, her file would be closed. (*Id.* at 0103.) Two months later, on September 22, 2004, plaintiff contacted defendant regarding her claim. (*Id.* at 0044.) Defendant informed plaintiff that her claim had been deemed abandoned because of her failure to supply the required information. (*Id.*) Plaintiff later sent defendant one page of medical notes regarding an August 13, 2004 visit with Dr. Wong. (*Id.* at 0101–02.) On January 3, 2005, defendant called plaintiff and informed her that no medical information had been received other than the medical notes of the one office visit and the APS. (*Id.* at 0045.) Plaintiff responded that she could not send any more records because she had not seen her attending physician since August and had not followed up with anyone regarding her diagnosis. (*Id.*) Defendant informed plaintiff that her claim would be reviewed on the available records. (*Id.*)

On January 19, 2005, defendant called Dr. Wong to obtain plaintiff's medical records but was told that such requests must be made in writing. (*Id.* at 0046.) The same day, defendant mailed a letter to Dr. Wong restating its request. (*Id.* at 0099.) Specifically, defendant requested readable medical documentation to support plaintiff's inability to perform her sedentary job from March 1, 2004 to the present. (*Id.*) On February 1, 2005, in response to defendant's request, Dr. Wong sent four pages of handwritten office visit notes, which in-

cluded the one page of notes dated August 13, 2004, previously sent to defendant. (*Id.* at 0095–98.)

Matthew M. Dubai, a nurse consultant and clinical specialist, reviewed plaintiff's claim based on the documentation defendant had received. (*Id.* at 0047.) In the written report, Dubai remarked that most of Dr. Wong's notes were unreadable, but he could decipher that plaintiff had a fall, was diagnosed with fibromyalgia, and had chronic lower back pain; however, he concluded that the "extent this effect[ed] her functional ability is not known." (*Id.*) Dubai described that the medical records did not demonstrate plaintiff's conditions affected her functional ability as there were no physical exams indicating any functional loss, no indication that tender points were tested for a diagnosis of fibromyalgia, no tests to rule out other causes for her pain, and no radiological studies indicating the pathology of her lower back pain. (*Id.*) Dubai concluded that the information provided did not demonstrate a functional impairment that would preclude plaintiff from performing her occupation full-time. (*Id.*) On February 7, 2005, defendant sent plaintiff a letter denying her claim for LTD benefits. (*Id.* at 0091–92.) Therein, defendant advised plaintiff of her right to appeal the determination and the procedures for submitting an appeal. (*Id.*)

On April 8, 2005, defendant received four additional pages of medical records from Dr. Wong: a MRI report dated February 19, 2004, and three pages of lab results dated January 16, 2004. (*Id.* at 0086–90.) On April 18, 2005, defendant informed plaintiff that it received additional information, and if she wanted to appeal the denial of her claim she had to follow the review procedures explained in the February 7, 2005 denial letter. (*Id.* at 0085.) In response, on April 28, 2005, plaintiff sent a letter stating she was ap-

pealing the denial of her claim. (*Id.* at 0082.)

Defendant then submitted plaintiff's medical records for review by Dr. Tanya C. Lumpkins. Dr. Lumpkins is a Board-certified Rheumatologist, a medical doctor specialized in the non-surgical treatment of rheumatic illness, who attested that her review of plaintiff's file did not constitute a conflict of interest. (*Id.* at 0077.) Dr. Lumpkins' report noted that plaintiff's MRI test was negative and her lab tests were unremarkable. (*Id.* at 0076.) In her conclusion, Dr. Lumpkins stated that "there is insufficient data to support an impairment of sufficient severity to prevent the claimant from performing the duties of [her] sedentary job full time." (*Id.* at 0077.) On May 16, 2005, defendant denied plaintiff's appeal. (*Id.* at 0062–64.) Defendant explained that it had determined that the medical records submitted by plaintiff did not substantiate a severity of symptoms that would prevent plaintiff from performing the material duties of a financial aid analyst. (*Id.*)

On August 8, 2006, plaintiff filed the instant suit against defendant in state court seeking damages for the denial of LTD benefits under the Plan. (Compl., filed Aug. 8, 2006, [Docket # 2].) Defendant removed the action to this court on grounds of ERISA-preemption on October 12, 2006. (Notice of Removal, filed Oct. 12, 2006.) Defendant now moves for summary judgment as to plaintiff's claims. In response to defendant's motion, plaintiff preliminarily moved to continue the motion for summary judgment to allow further discovery; alternatively, plaintiff responded to the merits of defendant's motion.

## ANALYSIS

### A. *Plaintiff's Request for Further Discovery*

Plaintiff seeks a continuance of defendant's motion for summary judgment to

allow further discovery regarding defendant's inherent structural conflict of interest in both administrating and funding the Plan. (Opp'n at 13.) For several reasons, plaintiff's request for further discovery is DENIED:

First, plaintiff's request is untimely. Pursuant to the court's Status (Pre–Trial Scheduling) Order, issued December 14, 2006, discovery closed March 2, 2007. Importantly, during the discovery period, plaintiff knew of the issues she now raises in her opposition; her contention that defendant "for the first time in its motion, stated unequivocally the Plan is discretionary" is false. (Opp'n at 4.) As stated above, the Plan expressly states that the administrator has full discretion when reviewing a claim. Defendant produced the Plan as part of its initial disclosures pursuant to Federal Rule of Civil Procedure 26. Also, in the parties' Joint Status Report, filed December 11, 2006, defendant stated it "denies that plaintiff is entitled to any relief in this action, and contends that its determination to deny plaintiff's claim was not an abuse of discretion." (Docket # 10, 2:6–8.) Thus, plaintiff was well aware of defendant's position that it had full discretionary authority in reviewing her claim from the outset of the action or, at a minimum, since December 2006. Yet, plaintiff conducted no discovery regarding defendant's alleged bias during the discovery period and did not request an extension of the deadline. Indeed, even now she presents no explanation for why she failed to seek the information she claims is necessary to a fair adjudication of this action.[4]

Second, plaintiff's arguments in support of extending discovery are not persuasive. Plaintiff baldly questions the background, training, experience, and financial relationship of defendant's independent physician, Dr. Lumpkins. (Opp'n at 7.) However, the record establishes that Dr. Lumpkins is a physician specialized in rheumatology who reasonably concluded, based on the information at her disposal, that plaintiff was not fully prevented from working. Plaintiff presents no reasons or evidence to find otherwise, and thus, the court cannot find that the requested discovery would demonstrate the existence of a conflict beyond the inherent conflict present because defendant administrates and funds the Plan.

█ Plaintiff also asserts that since the SSA granted her claim for benefits, defendant's denial of her claim should be further investigated. (Opp'n at 7, 10–11.) However, precedent and practicability lend no credence to plaintiff's assertion. Claims for SSA benefits are bound by the "treating physician rule," where deference is paid to the treating physician's analysis. *Black & Decker v. Nord,* 538 U.S. 822, 829, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). Thus, the SSA had to afford deference to Dr. Wong's conclusory statement that plaintiff could not work. However, in ERISA cases, the treating physician rule does not apply. *Id.* at 834 n. 4, 123 S.Ct. 1965. Therefore, defendant was not required to accept Dr. Wong's conclusory assertion of plaintiff's inability to work at face value and was entitled to credit other reliable evidence establishing plaintiff was not unable to work.

Furthermore, a chronological impossibility hinders plaintiff's assertion that further discovery is needed because SSA approved plaintiff's claim while defendant did not: SSA granted plaintiff's claim in April 2006, almost a year after defendant denied plain-

---

4. In moving for a continuance of the motion, plaintiff did not comply with the requirements of Federal Rule of Civil Procedure 56(f). For this alternative reason, plaintiff's request for discovery is properly denied.

tiff's appeal. Thus, defendant could not have considered SSA's ruling in their analysis. *Taft v. Equitable Life Assurance Co.,* 9 F.3d 1469 (9th Cir.1994) (recognizing that a claim administrator cannot be deemed to have abused its discretion based on evidence not before it at the time the decision was made).[5]

Finally, plaintiff's reliance on *Frost v. MetLife,* 414 F.Supp.2d 961 (C.D.Cal.2006), is unavailing as that case is readily distinguishable. In *Frost,* defendant MetLife, shared the same inherent conflict of interest found in this case of both administrating and funding the disability plan. *Id.* at 963. Metlife objected to the subpoenas the plaintiff served on three doctors who reviewed the medical records when the plaintiff first sought discovery on Met-Life's conflict of interest. *Id.* MetLife then filed a motion for protective order, "seeking to bar any depositions, written interrogatories or document production by the doctors." *Id.* The court concluded that limited discovery was permissible. *Id.* at 965. The circumstances are widely different in this case: here, there was a nearly three month discovery period when plaintiff could have sought the requested information but did not do so even though defendant did not demonstrate any reluctance to divulge or bar information obtainable from the nurse consultant or Dr. Lumpkins.

In sum, in this case, the only purported "evidence" of a conflict of interest is the fact of defendant's role as administrator and funder of the Plan. In such cases, courts have not granted discovery. *See e.g. Shemano–Krupp v. Mut. of Omaha Ins. Co.,* 2006 WL 3365595, *9–10, 2006 U.S. Dist. LEXIS 84352, *29–31 (N.D.Cal. Nov. 20, 2006) (denying discovery where there was no evidence of a conflict of interest beyond the "apparent conflict which exists when the insurer both funds and administers the plan"); *Baldoni v. Unumprovident, Ill. Tool Works, Inc.,* 2007 WL 649295, *5, 2007 U.S. Dist. LEXIS 14127, *15 (D.Or. Feb. 26, 2007) (denying discovery when an insurer both administers and funds the plan unless the plaintiff makes "a threshold showing"); *Newman v. Standard Ins. Co.,* 997 F.Supp. 1276, 1280–81 (C.D.Cal.1998) (denying discovery when an insurer both administers and funds the plan because of "immense practical problems associated with this position," including expensive litigation which "flies in the face of the purpose of ERISA").

**B.** *Applicable Standard of Review— Abuse of Discretion*[6]

 Before reaching the merits of defendant's motion, the court must determine whether to apply de novo or abuse of discretion review to defendant's denial of plaintiff's LTD benefits. The Plan at issue here is governed by ERISA. In *Firestone Tire & Rubber Co. v. Bruch,* the United

---

**5.** For this reason, the court sustains defendant's objection to the admission of the SSA record. (Def.'s Objs. to Pl.'s Notice of Filing SSA Record, filed June 22, 2007 [Docket # 35].) Information not in the administrative record before the claims administrator is generally not admissible in an ERISA benefits case. *Id.* at 1472.

**6.** In an ERISA benefits case, the "traditional" summary judgment standards are not necessarily appropriate. Fed.R.Civ.P. 56. Where, as here, the administrator's decision is re-

viewed for abuse of discretion, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgement, such as whether a genuine dispute of material fact exists, do not apply." *Bendixen v. Standard Ins. Co.,* 185 F.3d 939, 942 (9th Cir.1999) (finding that "[a]lthough there may be contradictory evidence in the record, we hold that, as a matter of law, the plan administrator did not abuse its discretion").

States Supreme Court held that a challenge to the denial of benefits under an ERISA plan is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). When a plan document gives an administrator such discretionary authority, a court must apply the "abuse of discretion" or "arbitrary and capricious" standard of review to its decision to deny benefits. *Id.* at 111, 109 S.Ct. 948; *see also Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 963 (9th Cir.2006).

■ In this case, the Plan unambiguously grants defendant discretion when reviewing claims. The Plan expressly states that "the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits ...." (ADMIN 0041.) Only where there are procedural violations "so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm," does the court apply de novo review despite the discretionary grant of authority. *Gatti v. Reliance Standard Life Ins. Co.,* 415 F.3d 978, 985 (9th Cir.2005). As an example of what constitutes "wholesale and flagrant violations of the procedural requirements of ERISA," the Ninth Circuit in *Abatie* cited the facts in *Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir.1984), noting that in *Blau,* "the administrator had kept the policy details secret from the employees, offered them no claims procedure, and did not provide them in writing the relevant plan information." *Abatie,* 458 F.3d at 971.

No such failure "to comply with virtually every applicable mandate of ERISA" is at issue here. *Id.* Defendant notified plaintiff, shortly after she filed her claim, that she must provide additional information, including "all medical records from current treating physicians." (ADMIN 0115–16.) A month later, defendant notified plaintiff that the requested information had not been received. (*Id.* at 0103.) Defendant also attempted to obtain plaintiff's records by initiating contact with plaintiff's physician, Dr. Wong. (*Id.* at 0046.) Furthermore, defendant informed plaintiff of her right to an appeal and of the procedures for filing one. (*Id.* at 0091–92, 0064.) Under these facts, the court concludes that defendant committed no "wholesale and flagrant violations" during the claims process and thus finds that abuse of discretion review is proper.

Nevertheless, plaintiff contends that further discovery could demonstrate a significant bias by defendant. (Opp'n at 8.) Plaintiff cites *Atwood v. Newmont Gold Co.,* 45 F.3d 1317 (9th Cir.1995) and its progeny, arguing that this bias would shift the burden to defendant to prove that such a conflict did not exist and if defendant failed to do so, the court would have to review the decision de novo. *Id.* However, *Abatie* explicitly overruled *Atwood* in its entirety; the *Atwood* burden-shifting analysis is no longer valid. *Abatie,* 458 F.3d at 966–67. *Firestone* and *Abatie* make clear that if a benefit plan explicitly confers discretion on the administrator, then abuse of discretion review applies, unless "wholesale and flagrant" violations exist.

■ In addition, abuse of discretion review applies even if the administrator has a structural conflict of interest, so long as the Plan unambiguously grants the administrator discretion. *Abatie,* 458 F.3d at 965. Thus, the fact that defendant both administrates and funds the Plan is not sufficient, in itself, to invoke de novo review. However, a conflict of interest

should not be ignored. *Firestone* requires that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a [structural] conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.' RESTATEMENT (SECOND) OF TRUSTS § 187, cmt. d (1959)." *Firestone*, 489 U.S. at 115, 109 S.Ct. 948. Therefore, the court recognizes that the inherent conflict of interest found in this case is a factor to consider when analyzing defendant's denial of Plan benefits; however, the conflict of interest does not alter the standard of review, which, in this case, the court concludes is abuse of discretion.

## C. *Defendant's Denial of Plaintiff's LTD Benefits Claim*

■ Applying the abuse of discretion standard of review, the sole issue before the court is whether defendant abused its discretion, or in other words, acted arbitrarily and capriciously, in denying plaintiff's LTD claims. An administrator's decision is an abuse of discretion only when it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 (3rd Cir.1993) (citations omitted); *Taft v. Equitable Life Assurance Co.*, 9 F.3d 1469, 1472 (9th Cir. 1994). So long as the administrator's decision has a rational basis, the court is not free to substitute its own judgment for that of the administrator in determining the eligibility for plan benefits even if the court disagrees with that decision. *Id.* Under the abuse of discretion standard, the only issue is whether, on the evidence considered, the administrator's determination was "reasonable." *Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412, 1417 (9th Cir.1991); *see also Clark v. Wash. Teamsters Welfare Trust*, 8 F.3d 1429, 1432 (9th Cir.1993) ("Our inquiry is not into whose interpretation of plan docu-

ments is most persuasive, but whether the plan administrator's interpretation is unreasonable.")

■ Moreover, the scope of review under the arbitrary and capricious standard is very limited. The focus of an abuse of discretion inquiry is the administrator's analysis of the administrative record—it is not an inquiry into the underlying facts. *Alford v. DCH Found. Group Long–Term Disability Plan*, 311 F.3d 955, 957 (9th Cir.2002). Thus, the court will not consider information outside the administrative record, as it would be improper to find a claims administrator abused its discretion based on evidence not before it at the time the decision was made. The Ninth Circuit explained the reasoning in *Taft*, 9 F.3d at 1472:

> Permitting a district court to examine evidence outside the administrative record would open the door to the anomalous conclusion that a plan administrator abused its discretion by failing to consider evidence not before it. Moreover, such expanded review would impede an important purpose of the federal statute under which district courts have jurisdiction to review these administrative decisions:

> A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously. Permitting or requiring district courts to consider evidence from both parties that was not presented to the plan administrator would seriously impair the achievement of that goal.

■ Here, a review of the administrative record reveals that defendant did not abuse its discretion in denying plaintiff's LTD benefits claim. The evidence shows that defendant made a reasonable conclusion based on the materials and records at

its disposal. The initial claim was denied by a nurse consultant who determined, based on the information presented, that plaintiff was not precluded from performing her occupation. Plaintiff was employed as a financial aid analyst, which is a fully sedentary position. The record that the nurse consultant reviewed contained Dr. Wong's notes stating that plaintiff suffered lower back pain and had a diagnosis of fibromyalgia. The APS statements remarked, contradictory, that plaintiff *could* work no more than twenty-five hours per week and also that plaintiff could not work at all. However, the second APS failed to address the *reason* for plaintiff's purported inability to work; instead, it provided the same analysis of plaintiff's health condition as the first APS, which stated that plaintiff *could* work twenty-five hours per week. The notes did not indicate the extent of plaintiff's disabilities and thus the consultant reasonably concluded that there was insufficient evidence to support plaintiff's claim. Defendant is permitted to refuse the analysis of the claimant's treating physician. "Plan administrators are not obligated to accord special deference to the opinions of treating physicians." *Black & Decker v. Nord,* 538 U.S. 822, 825, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003).

 Additionally, defendant did not abuse its discretion in denying plaintiff's appeal. After defendant denied plaintiff's initial claim, plaintiff submitted four additional pages of medical records from Dr. Wong: a MRI report and three pages of lab results. Defendant then submitted plaintiff's medical records for review by Dr. Lumpkins. Dr. Lumpkins, a Board-certified Rheumatologist, reported that plaintiff's MRI test was negative and her lab tests were unremarkable. In her conclusion, Dr. Lumpkins stated that "there is insufficient data to support an impairment of sufficient severity to prevent the claim-

ant from performing the duties of [her] sedentary job full time." (ADMIN 0077.) On the other hand, Dr. Wong's conclusory opinion, which was unsupported by her own findings, stated plaintiff should not work. Defendant was warranted in crediting Dr. Lumpkins conclusion over Dr. Wong's. *See Mitchell v. Aetna Life Ins. Co.,* 359 F.Supp.2d 880, 890 (C.D.Cal.2005) (granting summary judgment in favor of defendants on the grounds that the plan administrator did not abuse its discretion in denying the employee's LTD benefits claim based on the employee's "subjective reports of pain and her doctors' unexplained conclusory opinions that she was disabled from performing any job").

In sum, in reviewing the administrative record, the court cannot conclude that defendant abused its discretion in denying plaintiff's initial claim or appeal. Defendant's conclusion, based on the review by a nurse consultant and Dr. Lumpkins, was supported by the evidence and was both reasonable and rational.

In a case involving similar facts, the District Court for the Central District of California reached the same conclusion. In *Jordan v. Northrop Grumman Corp.,* 63 F.Supp.2d 1145, 1148–49 (C.D.Cal.1999), *aff'd,* 370 F.3d 869 (9th Cir.2004), the plaintiff, which had a sedentary job as a secretary, filed suit against MetLife under ERISA seeking benefits under Northrop's welfare benefits plan. As in this case, MetLife both administrated and funded the plan. *Id.* at 1155. The plaintiff submitted limited materials to MetLife, which, in turn, requested from the plaintiff and her doctors the required materials to support her claim. *Id.* at 1151. Despite two requests by MetLife, the plaintiff failed to submit the requested records. *Id.* Similar to this case, MetLife concluded that the plaintiff failed to sustain a claim for benefits because the evidence submitted to

MetLife did not demonstrate the plaintiff's inability to work. *Id.* On appeal, the plaintiff identified her condition as fibromyalgia. *Id.* MetLife again requested medical information which "supports a condition of total disability." *Id.* at 1152. An independent doctor, specialized in rheumatology, examined the additionally supplied information and concluded that the plaintiff's records did not support her inability to work. *Id.* MetLife, crediting its doctor's analysis, denied the plaintiff's appeal. *Id.* at 1153.

The district court, applying the abuse of discretion standard of review, emphasized that the burden in substantiating a claim for benefits rests on the plaintiff. *Id.* at 1155. Thus, as in this case, MetLife was not responsible for the fact that there was insufficient evidence to establish the plaintiff's inability to work. MetLife made several attempts to acquire medical records articulating the plaintiff's inability to perform her occupation and the court concluded these attempts were sufficient to demonstrate MetLife's effort in providing a fair review of the plaintiff's claim. *Id.* at 1152–53.

This court finds similarly here. Defendant provided plaintiff with ample opportunity to submit documents to prove she was unable to work. The information plaintiff supplied did not demonstrate this inability. Dr. Wong presented no reason for her contrary opinion in the second APS, which stated plaintiff could not work. The MRI report and three pages of lab results submitted on plaintiff's appeal did not support plaintiff's claim for benefits: the MRI report was negative and the lab results were unremarkable. An independent medical doctor, specialized in rheumatology, opined that the evidence failed to demonstrate plaintiff's inability to perform her occupation full-time. The court finds defendant's acceptance of this determination reasonable.

Finally, the fact that MetLife both administrated and funded the plan was not dispositive to the court's ruling in *Jordan.* Although an apparent conflict of interest exists when an insurer both funds and administers a plan, abuse of discretion review still governs a court's analysis if the ERISA plan grants discretion to the plan administrator. *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 967 (9th Cir. 2006). "The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of parsimonious claims-granting history." *Id.* at 968. Because no such malice is evident in defendant's denial of plaintiff's claim here, the court's skepticism of defendant is de minimus. Thus, while the court considers the inherent conflict of interest found in defendant because it both administrates and funds the Plan, that conflict, coupled with no other significant factor, does not provide the court grounds to find an abuse of discretion when considering defendant's denial of plaintiff's LTD benefits claim.

## CONCLUSION

For the foregoing reasons, the court GRANTS defendant's motion for summary judgment. The Clerk of the Court is directed to close this file.

IT IS SO ORDERED.