**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TIMOTHY DUPREE; ALEXANDRA
MARTINI,

     *Plaintiffs-Appellants,*

v.

HOLMAN PROFESSIONAL COUNSELING
CENTERS; BEVERLY HILLS HOTEL
PLAN, e/s/a The Beverly Hills
Hotel Employee Health Plan,

     *Defendants-Appellees.*

No. 07-55617

D.C. No.
CV-06-06826-PSG

OPINION

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted
October 22, 2008—Pasadena, California

Filed July 29, 2009

Before: Harry Pregerson and Cynthia Holcomb Hall,
Circuit Judges, and David Alan Ezra,* District Judge.

Opinion by Judge Hall;
Dissent by Judge Pregerson

---

*The Honorable David Alan Ezra, United States District Judge for the
District of Hawaii, sitting by designation.

9929

**COUNSEL**

Lisa S. Kantor, Kantor & Kantor, Northridge, California, for the plaintiffs-appellants.

Robert C. Bohner, Sedgwick, Detert, Moran & Arnold, and Michael A. Vanic, Reish Luftman Reicher & Cohen, Los Angeles, California, for the defendants-appellees.

**OPINION**

HALL, Senior Circuit Judge:

## I.   Introduction

Timothy Dupree ("Dupree") and Alexandra Martini ("Alexandra"), father and step-daughter, bring this ERISA appeal concerning whether or not Dupree's employee health plan covers Alexandra's stay at a residential treatment center ("RTC") that had no contract with insurer Holman Profes-

sional Counseling Centers ("Holman"). The district court found that the stay was not covered. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## II.   Background

### A.   The Behavioral Health Insurance Plan

Dupree's employer, Beverly Hills Hotel, contracted with Holman for behavioral health insurance coverage. Holman agreed to provide behavioral health services "through Providers pursuant to the Schedule of Benefits," allowing that, if enrollees chose to instead use non-contracted providers, they would do so at their own expense, "except as otherwise provided in this Group Plan Contract."[1] This language is echoed in other contract provisions: declining to provide reimbursement "except in emergency cases or as outlined in this Group Plan Contract," and declining to cover non-emergency treatment by non-contracted providers "unless otherwise stated in the Agreement." It also appears in the "Exclusions" section, which denies coverage for services performed by non-contracted providers except in emergency cases or as "otherwise authorized by the Plan." However, the plan also excludes coverage for "[a]ny service that is not specifically listed as a covered benefit."

---

[1]We quote from the February 2004 version of the group contract. The parties agreed that the December 2004 version was the applicable one, but have identified no differences between the two versions of the group contract. The December 2004 version of the "Evidence of Coverage & Disclosure" provided by the hotel to its employees is also consistent with the February 2004 policy language.

There are differences between the February 2004 and December 2004 benefit schedules. Nonetheless, Dupree's counsel said during oral argument that those differences were not significant to her theory of the case, and so we do not consider them. The portions of the benefit schedule we quote here are the same in both versions.

The plan defines providers as licensed, experienced persons working individually or within a clinic who are "employed or under contract with Holman to deliver Behavioral Health Services to Enrollees." The definition section then distinguishes between contracted providers (those who have "contracted with Holman to deliver specified services") and non-contracted providers (those without such a contract), while cautioning that "Enrollees may be liable for the cost of non-emergency services provided by Non-Contracted Providers."

Most relevant to this appeal, the Holman plan includes care at a "Sub-Acute Care Facility," which is any RTC that "has entered into a provider agreement with Holman." In the benefit schedule, Category III, Section C (entitled "Residential Treatment, Transitional Care, Day Treatment, Partial Hospitalization") constitutes the RTC benefit provided for drug and alcohol treatment.[2] Category III also includes other sections detailing additional drug and alcohol treatment benefits: (A) "Outpatient," (B) "Contracted Providers-Inpatient Hospital," (D) "Non-Contracted Providers-Inpatient Hospital," and (E) "Non-Contracted Providers-Outpatient Services." Section D only covers non-contracted care in an emergency situation. Section E is not limited to emergencies, but has written below its description: "NOT A COVERED BENEFIT."

## B.    Alexandra's Treatment

In the fall of 2005, Alexandra's mother ("Ms. Dupree") approached Holman to get help for her daughter. Alexandra was 15 years old. One year earlier she had been diagnosed with diabetes and prescribed insulin, but failed to follow through with the treatment. She had already blacked out from drinking on multiple occasions and been using illegal drugs for two years.

---

[2]The district court mistakenly focused instead on Section D ("Non-Contracted Providers-Inpatient Hospital"). The applicable section, and the one argued in Dupree's trial brief, was Section C.

Between August 26, 2005, and September 6, 2005, Ms. Dupree spoke with Holman representatives about finding an RTC for Alexandra. After being apprised of Alexandra's substance abuse and diabetes, Holman provided Ms. Dupree with contact information for two contracted RTCs. Ms. Dupree said she would let Holman know if she was interested in them. To Alexandra's therapist and UCLA doctors, Ms. Dupree instead indicated her preference for a third option: Visions Adolescent Treatment Program ("Visions"), an RTC in Malibu providing on-site diabetes treatment. The UCLA doctors wrote to Holman, recommending Alexandra be sent to Visions, even though it was "not currently covered by [Dupree's] plan," because, "according to [Ms.] Dupree," it was the only facility that could manage Alexandra's substance abuse and diabetic needs. In response to this letter and to Ms. Dupree's statement that she was interested in Visions rather than the two contracted RTCs,[3] Holman cautioned that "Visions is not in-network" and that Dupree's insurance did not "carry an Out-of-Plan benefit."

Alexandra was admitted to Visions on September 7, 2005, for alcohol poisoning following a blackout. She stayed there until October 29, 2005.

## C.    Administrative and District Court Proceedings

In November 2005, Dupree submitted a claim to Holman requesting reimbursement for Alexandra's treatment at Visions. Holman denied the claim as an uncovered out-of-plan benefit. Dupree appealed, and Holman reiterated its denial. Ms. Dupree tried two more times, and Holman conducted two medical review summaries in response, determining that (1) Alexandra was admitted to the out-of-network provider without authorization when contracted facilities were

---

[3]After coverage for Visions was denied on administrative appeal, Ms. Dupree said she had determined that neither of the recommended facilities provided on-site diabetes treatment.

recommended and appropriate, and (2) Alexandra's condition did not constitute an emergency.

Dupree then filed a complaint in district court. After a bench trial, that court found for Holman, determining that the insurer properly denied benefits for Alexandra's use of the non-contracted provider. This timely appeal followed.

### III.   Standard of Review

We review the district court's interpretation of an ERISA plan *de novo* and that court's factual findings for clear error. *Shane v. Albertson's Inc.*, 504 F.3d 1166, 1168 (9th Cir. 2007).

### IV.   Discussion

The question before us is a narrow one:[4] does Dupree's plan cover non-emergency treatment at a non-contracted RTC? We find that it unambiguously does not.

**[1]** When reviewing an ERISA policy, we "apply contract principles derived from state law . . . guided by the policies expressed in ERISA and other federal labor laws." *Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007) (internal quotation marks omitted). Those direct us to look to the agreement's language in context and construe each provision in a manner consistent with the whole such that none is rendered nugatory. *See id.*; *see also* Cal. Civ. Code § 1641 (requiring contracts to be read as a whole, giving effect to every part). "We will not artificially create ambiguity where none exists. If a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy." *Evans v.*

---

[4]In oral argument, Dupree's counsel abandoned any argument that Alexandra's treatment came in response to an emergency as defined by the plan.

*Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990) (internal quotation marks and citations omitted).

Dupree's argument hinges on two aspects of the policy—one in the group contract itself and one in the benefits schedule—which he claims together create an ambiguity that should lead us to find coverage due. *See Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health & Welfare Benefit Plan*, 64 F.3d 1389, 1393 (9th Cir. 1995) (construing ambiguities in favor of the insured). First, Dupree points to the contract language indicating that non-contracted provider services, while not usually covered, are covered in cases of emergency *or* (significantly) "as otherwise provided in this Group Plan Contract." In order to give this latter clause meaning, Dupree contends that the plan must somewhere cover non-emergency, non-contracted RTC treatment. For that somewhere, he would have us look to the benefits schedule and compare Section C (the residential treatment benefit) with the other sections in the category. Since those other sections distinguish between non-contracted and contracted providers and Section C does not, Dupree argues that Section C covers both contracted and non-contracted providers, thus giving meaning to the "as otherwise provided" language.

We find this argument unpersuasive.

[2] First, the policy's repeated assertion that non-contracted provider services are not generally covered establishes a default presumption of no coverage that must then be overcome by a showing of emergency (not at issue here) or some statement in the plan granting coverage. The policy's "Exclusions" section reinforces this presumption, denying coverage for any benefit "not *specifically listed* as a covered benefit." As discussed below, several non-contracted provider services *are* specifically listed as covered. Non-contracted RTC services, however, are not. Dupree's argument would have us elevate what they claim is a suggestive omission in the bene-

fits schedule to a specific grant of coverage. To do so would twist the policy's language.

Furthermore, the acknowledgment of this default presumption does not give short shrift to the presumption's exceptions. Finding that only contracted residential treatment was covered does not render the "unless otherwise stated" exception surplusage. To the contrary, the plan includes several places where non-emergency, non-contracted services might have been covered. For example, the plan describes coverage for any non-contracted, transitional mental illness treatment which follows initial emergency treatment, as well as coverage for non-contracted, non-emergency outpatient mental illness and drug and alcohol treatment services. The plan's general language includes the "unless otherwise stated" exception to encompass these benefits. Ultimately, these three benefits were not purchased by Dupree's employer, and "NOT A COVERED BENEFIT" was inserted under the three provisions to reflect that choice. Nonetheless, the policy's general language still needed to accommodate the possibility that those provisions *could* have been selected. Therefore, our interpretation gives effect to the "unless otherwise stated" language.

[3] Finally, even though the policy did not distinguish between contracted and non-contracted residential treatment providers, the policy obviates the need for such a distinction. RTCs are included in the definition of "Sub-Acute Care Facility" and described as centers that have "entered into a provider agreement." Thus, the benefits schedule would naturally assume that treatment at one of these RTCs would be done by a contracted provider and would not have needed to include the "contracted providers" modifier to make this clear. Conversely, had residential treatment with *non*-contracted providers been an offered benefit, the fact that the plan's definition of RTCs only included contracted providers means that a separate mention for non-contracted providers would have been required to make that clear. There is no separate mention here.

## V.   Conclusion

**[4]** For these reasons, we decline to find this contract ambiguous. Dupree's employer chose to provide its employees with a behavioral health insurance plan that only covered stays at contracted RTCs, such as the two that were suggested to, but declined by Ms. Dupree.

Because we find no coverage in the Holman plan for non-contracted RTCs and because prior authorization is only required before obtaining covered services, we need not reach the question of prior authorization.

The district court's decision is thus **AFFIRMED**.

---

PREGERSON, Circuit Judge, dissenting:

The majority opinion holds that the Behavioral Health Plan that Timothy Dupree purchased "unambiguously does not" cover non-emergency treatment at non-contracted provider Residential Treatment Centers. I respectfully disagree. I believe the plain text of the Behavioral Health Plan's Group Contract and Benefits Schedule is ambiguous with regard to non-contracted provider Residential Treatment Centers. I believe the Behavioral Health Plan's Schedule of Benefits can be interpreted to cover Residential Treatment Center services from both non-contracted and contracted providers because the Schedule of Benefits does not clearly distinguish between non-contracted provider Residential Treatment Centers and contracted provider Residential Treatment Centers.

If an employee benefit plan is ambiguous, it must be "construed against the drafter and in favor of the insured." *Barnes v. Indep. Auto. Dealers Assoc. of Cal. Health and Welfare Benefit*, 64 F.3d 1389, 1393 (9th Cir. 1995) (citing *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46

F.3d 938, 942 (9th Cir. 1995)). The majority opinion states that the Dupree's Behavioral Health Plan "unambiguously does not" cover non-emergency treatment at non-contracted Residential Treatment Centers. Indeed, the majority opinion's interpretation of the plan is reasonable. I believe, however, that there is another reasonable interpretation.

As the majority opinion notes, the Behavioral Health Plan's Group Contract repeatedly states that non-contracted provider services are not usually covered except in cases of emergency or "*as otherwise provided* in this Group Plan Contract."* (Emphasis added.) The "as otherwise provided" language suggests that non-emergency services by non-contracted providers may be covered under the Behavioral Health Plan. At the very least, this language is ambiguous as to what "as other-

---

*There are multiple provisions in the Group Contract which suggest non-contracted provider services may be covered. The following provisions contain such language:

- Section 1.32 of the Group Contract, which defines "Non-Contracted Provider," states that 'Enrollees *may* be liable for cost of non-emergency services provided by Non-Contracted Providers."

- Section 3.1 of the Group Contract, "Provisions of Services" states that "[i]f the Enrollee wishes to use Non-Contracted Provider, Enrollee would so at his or her own expense, *except as otherwise provided in this Group Plan Contract."*

- Section 4.6 of the Group Contract, "Choice of Providers," states that "Holman shall not reimburse Enrollees who secure services from licensed Non-Contracted Providers, except in emergency circumstances *or as outlined in this Group Plan Contract."*

- Section 4.10 of the Group Contract, "Emergency Behavioral Health Treatment," states that Holman will not cover non-emergency behavioral health treatment provided by Non Contracted Providers and Hospitals *unless otherwise stated in this agreement."*

- Section 5.1 of the Group Contract excludes "[s]ervices provided by Non-Contracted Providers except for those that qualify as emergency behavioral health treatment hospital admissions *or are authorized by the Plan."*

(Emphasis added.)

wise provided" might refer to, and gives no indication of the intended meaning of the "clear intent of the parties." *See Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007) (stating that "the terms in an ERISA plan should be interpreted in an ordinary and popular sense as would a [person] of average intelligence and experience" and "courts should first look to explicit language of the agreement to determine, if possible, the clear intent of the parties.").

The majority opinion argues that the "as otherwise provided" language refers only to non-contracted provider services that are specifically listed as a covered benefits. In particular, the majority opinion states this language exists because it is possible to "contract with Holman Centers to provide additional non-contracted provider services." The majority opinion then lists "several places where non-emergency, non-contracted services might have been covered." There is, however, no language in the Behavioral Health Plan that states that the purpose of the "as otherwise provided" language is to allow individuals to purchase additional non-contracted provider services. Additionally, the provisions the majority opinion cites as examples were specifically identified as "NOT A COVERED BENEFIT." This was not the case with respect to non-contracted provider Residential Treatment Centers.

Indeed, the Behavioral Health Plan's Schedule of Benefits is ambiguous with respect to whether non-contracted provider Residential Treatment Center services are a covered benefit. Category III, Section C of the Behavioral Health Plan's Schedule of Benefits addresses coverage at Residential Treatment Centers.[1]But that section does not distinguish between

---

[1]Category III of the Behavioral Health Plan's Schedule of Benefits includes six sections:

   A.   "Outpatient"

   B.   "Contracted Providers-Inpatient Hospital"

   C.   "Residential Treatment, Transitional Care, Day Treatment, Partial Hospitalization"

contracted providers and non-contracted providers when discussing Residential Treatment Centers. In contrast, other sections in Category III make clear whether they refer to non-contracted provider benefits or contracted-provider benefits. For example, Category III includes separate sections with separate titles for non-contracted provider inpatient services (Section D — "Non-Contracted Providers-Inpatient Hospital") and contracted provided inpatient services (Section B — "Contracted Providers-Inpatient Hospital"). It also includes separate sections for non-contracted provider outpatient services (Section E — "Non-Contracted Providers-Outpatient Services") and contracted provided outpatient services (Section A — "Outpatient"). Category III includes, however, only one section for Residential Treatment (Section C — "Residential Treatment, Transitional Care, Day Treatment, Partial Hospitalization"). Moreover, non-contracted provider outpatient services are explicitly listed as "NOT A COVERED BENEFIT" in Category III, whereas Category III does not state that non-contracted provider Residential Treatment is not a covered benefit. I therefore believe that it is reasonable to interpret the Schedule of Benefits as covering Resident Treatment Center services from both non-contracted and contracted providers.

Accordingly, I dissent and would hold that the treatment Dupree's daughter, Alexandra Martini, received at *Visions* Residential Treatment Center should have been covered under Dupree's Behavioral Health Plan.

---

    D.   "Non-Contracted Providers-Inpatient Hospital"

    E.    "Non-Contracted Providers-Outpatient Services" (listed as "NOT A COVERED BENEFIT")

    F.    "Ambulance"