FILED

NOV 13 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DOUGLAS B. POWELL,

        Plaintiff - Appellant,

  v.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY; THE
CADENCE DESIGN SYSTEMS, INC.
LONG TERM DISABILITY PLAN,

        Defendants - Appellees.

No. 13-16529

D.C. No. 3:12-cv-01705-TEH

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Thelton E. Henderson, Senior District Judge, Presiding

Argued and Submitted October 23, 2015
San Francisco, California

Before: WALLACE, BLACK[**], and CLIFTON, Circuit Judges.

Plaintiff Douglas B. Powell appeals the district court's grant of summary

judgment to defendant The Hartford Life and Accident Insurance Company.

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Susan H. Black, Senior Circuit Judge for the U.S.
Court of Appeals for the Eleventh Circuit, sitting by designation.

Powell claims that Hartford abused its discretion in calculating his Monthly Rate of Benefits under his employer's ERISA Plan by improperly pro rating his "MBO/Key Contributor Bonus." He argues that the Bonus, which was awarded for work that he completed between January 1, 1995 and June 30, 1995, should be pro rated over six months, the period to which it relates, and not over twelve months, which is what Hartford did. We disagree and affirm the district court.

When a plan confers discretion on a plan administrator "to determine eligibility for benefits or to construe the terms of a plan," review is for abuse of discretion. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Here the Plan grants Hartford such discretion. But when "a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008) (quotation marks and citation omitted). In this instance, Hartford operated under a conflict of interest because it both paid the Plan's benefits and served as Plan administrator. Thus, our review is for abuse of discretion with consideration of Hartford's conflict of interest as a factor.

Powell contends that the plain language of the Plan requires pro rating the Bonus over six months. But the Plan's definition of "Monthly Rate of Basic Earnings," defined as "the rate in effect on your last day as an Active Full-time Employee before becoming Disabled" is ambiguous. Nothing in the Plan states exactly how to pro rate a bonus to get a proper "rate in effect," and the Plan itself does not define that term.

"Rate in effect on your last day" has a plain meaning when applied to regular pay, which is earned incrementally and at a known, fixed rate. As applied to bonuses, however, the phrase is ambiguous. Only with the benefit of hindsight can one discern any daily "rate" applicable to a bonus. The Plan unambiguously includes bonuses in the calculation of Monthly Rate of Basic Earnings, but "rate in effect on your last day" fails to account for the discretionary and variable nature of bonuses and is therefore ambiguous as applied to bonuses.

Hartford states that it has a policy to pro rate any bonuses earned in the year preceding a disability over twelve months, which is consistent with how the plan deals with other variable income sources, like commissions. That the Plan specifies the use of that method for commissioned employees does not logically make that method unreasonable or preclude Hartford from adopting it as a logical interpretation of ambiguous language with regard to non-commissioned

3

employees. Hartford followed this policy with respect to the Bonus, and nothing in the record suggests that Powell was singled out for unfair treatment according to such an internal policy. Indeed, with regard to another bonus, the "Patent Award," which related to work over an indefinite period of time, but a period of time likely longer than a year, Hartford pro rated it over twelve months in determining Plaintiff's Monthly Rate of Basic Earnings. Thus, the internal policy of Hartford actually worked to Powell's advantage with respect to the Patent Award.

Although we consider Hartford's conflict of interest as a factor in determining whether Hartford abused its discretion, its interpretation of "rate in effect" was not "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the record." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (internal quotation marks omitted). Hartford's uniform application of that interpretation did not constitute an abuse of discretion.

Plaintiff also argues that the doctrine of contra proferentem should apply here. But when an ERISA plan grants an administrator discretion, contra proferentem is inapplicable. *See Day v. AT&T Disability Income Plan*, 698 F.3d 1091, 1098 (9th Cir. 2012).

**AFFIRMED.**

4

*Powell v. Hartford Life & Accident Ins. Co.*, No. 13-16529

WALLACE, J., dissenting

Hartford's blanket application of a one-size-fits-all rule that all compensation will be averaged over twelve months in calculating disability benefits contradicts the plain language of the plan Hartford administers. Because Hartford administers the plan in a way that contradicts the plan's unambiguous terms, I dissent from the majority's holding that Hartford did not abuse its discretion in applying its one-size-fits-all rule to Powell's semi-annual MBO/Key Contributor Bonus.

Lest there be any doubt about whether Powell's MBO/Key Contributor Bonus was either a semi-annual or annual bonus, the record before us makes clear that it was a semi-annual bonus. In an internal memorandum circulated by Powell's employer, the company stated that the bonus "covers the period from January 1, 1995 – June 30, 1995." Further, both the subject line of the letter and its first sentence refer to the bonus as the "1H 1995 Key Contributor Bonus." "1H," read in context, meant the first half of the year, since the letter also reminds bonus plan participants that they "need to complete [their] 2H '95 goals . . . before the end of July." With it established that all parties to the MBO/Key Contributor Bonus arrangement (including Powell and his employer) intended that the bonus be paid on a semi-annual basis, we turn to the plan itself to see how it deals with such

bonuses and then determine whether Hartford's interpretation of the plan provisions was reasonable. *Day v. AT&T Disability Income Plan*, 698 F.3d 1091, 1096 (9th Cir. 2012), *quoting Conkright v. Frommert*, 559 U.S. 506, 521 (2010) ("Under the deferential abuse of discretion standard of review, 'the plan administrator's interpretation of the plan will not be disturbed if reasonable'"). While the abuse of discretion standard is highly deferential, we must be careful to avoid rubber-stamping Hartford's interpretation. *Tapley v. Locals 302 & 612*, 728 F.3d 1134, 1140 (9th Cir. 2013), *quoting Conkright*, 559 U.S. at 521 ("The Court's review of the [plan administrator's] interpretation is not without bite . . . 'a deferential standard of review does not mean that the plan administrator will prevail on the merits'").

In determining the plain meaning of plan language, "we 'apply contract principles derived from state law . . . guided by the policies expressed in ERISA and other federal labor laws.'" *Dupree v. Holman Prof. Counseling Ctrs.*, 572 F.3d 1094, 1097 (9th Cir. 2009), *quoting Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007). We must "look to the agreement's language in context and construe each provision in a manner consistent with the whole such that none is rendered nugatory." *Id.* "'We will not artificially create ambiguity where none exists.'" *Id.*, *quoting Evans v. Safeco Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990).

2

Applying those principles here, I conclude that Hartford unreasonably interpreted a plan provision requiring it to pay the "rate in effect on [the insured's] last day" to mean it could divide all forms of compensation by twelve months. At the crux of this case is the definition of a term used in the plan called "Monthly Rate of Basic Earnings." That term is a key cog in figuring out how much an insured is entitled to. The plan defines "Monthly Rate of Basic Earnings" as an insured's "regular monthly pay, including bonuses." The plan also tells us at what point in time of an insured's employment Hartford is to assess the insured's earnings by providing that "[i]f you become Disabled, your Monthly Rate of Basic Earnings will be *the rate in effect on your last day* as an Active Full-time Employee before becoming Disabled." (emphasis added). The dispute here is not over whether Powell is entitled to have his MBO/Key Contributor Bonus factored into his disability payment; neither party disputes that he is. The dispute here is over how to interpret the phrase "the rate in effect on your last day." The plan does not define that phrase, so I turn to traditional methods of contract interpretation to ascertain its meaning.

One well-accepted dictionary definition of "rate" is "[t]he relationship by which the amount or number of one thing corresponds proportionally to the amount or number of another, typically stated as a particular numerical amount per

3

unit." OXFORD ENGLISH DICTIONARY ONLINE, rate, n.1 (September 2015), http://www.oed.com/view/Entry/158412?rskey=gev7UJ&result=2&isAdvanced=false. Under that definition, a "rate" consists of at least two parts: (1) an amount, and (2) a unit of measurement. So, for example, if someone asked you "what is your heart *rate*," an answer of "70" would be incomplete because there is no unit of measurement. Likewise, with respect to a *rate* of pay one must determine both the amount of pay and the period of time over which that amount was earned. Applied here, the first part of Powell's "rate" was the amount of his Key Contributor Bonus, which was $5,964.78. The second part of Powell's "rate" was the time period over which that amount was earned, which on the "last day" of Powell's employment was semi-annually (as the company's letter, discussed above, establishes).

Interpreting the phrase "the rate in effect on your last day" in this way is buttressed by comparing the language to other plan provisions. The phrase at issue here appears in the part of the plan that is applicable only to non-commissioned employees (such as Powell). The plan contains entirely separate provisions for commissioned employees. The plan provides that for commissioned employees, "your Monthly Rate of Basic Earnings will be the average of any monthly salary or wages, plus commissions . . . . Average monthly earnings will be based on: (1) the

4

12 month period ending prior to the date you become Totally Disabled, if you have worked . . . for at least 12 months; or (2) the number of calendar months you worked prior to the date you became Totally Disabled, if you have worked for . . . fewer than 12 months." So, in the provision governing commissioned employees, the plan expressly specifies that an insured's monthly earnings will be averaged over twelve months. That is exactly what Hartford would like to do in this case, but the problem with Hartford's interpretation is that the provision governing Powell does something different. By not using that same language in the provision governing non-commissioned employees (such as Powell), the implication is that non-commissioned employee earnings will not automatically be averaged over twelve months.

Considering the relationship between the plan provisions governing commissioned and non-commissioned employees is essential if we are to give both provisions their full effect. *See* ANTONIN SCALIA & BRYAN GARNER, READING LAW 167 (2012) ("A legal instrument typically contains many interrelated parts that make up the whole. The entirety of the document thus provides the context for each of its parts"). Indeed, we have employed this type of analysis in other cases involving employee benefit plans. In *Blakenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 625 (9th Cir. 2007), we construed the term "receives" to

5

mean "possession through actual receipt of funds." *Id.* We then "buttressed" our interpretation by examining the structure of the plan's terms. *Id.* We observed that the plan contrasted benefits that an insured "receives" and those for which an insured was "eligible." *Id.* That distinction led us to reason that because the plan reduced benefits "based on eligibility for certain types of payments, without requiring evidence that the individual received the payments or even applied for them, . . . where the [plan] requires a deduction of benefits because of funds "received," the term is properly read to mean funds that actually come into the possession of the insured. *Id.*

In essence, we concluded that "receives" must mean that the insured has actual possession of funds since the plan expressly reduced benefits based on mere eligibility for other benefits. Application of the interpretative principles applied in *Blakenship* therefore supports interpreting "the rate in effect on your last day" to require plan providers to pay benefits based on the measurement of payment applicable on the employee's last day of work.

I understand why Hartford uses a blanket rule of dividing all forms of compensation by twelve months. The company administers many insurance plans covering many employees with different compensation arrangements. Determining each employee's "rate in effect on [the employee's] last day" is undoubtedly more

6

difficult than dividing all forms of compensation by twelve months. But Hartford's desire for efficiency cannot overcome the need to interpret words in accordance with their plain meaning. The plan's command that Hartford pay an insured based on "the rate in effect on [the insured's] last day," combined with the plan's distinctions between commissioned and non-commissioned employees, renders Hartford's blanket rule unreasonable. Accordingly, I would hold that Hartford abused its discretion in interpreting the plan and I therefore dissent from the majority disposition on that basis.